# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1627

_____

| | | |
|---|---|---|
| Sandra Smith, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Ashland, Inc., a Kentucky corporation, | * | District Court for the |
| doing business as Ashland Petroleum, | * | District of Minnesota |
| formerly known as Ashland Oil & | * | |
| Refining Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  December 14, 2000

Filed:  May 18, 2001

_____

Before McMILLIAN and MURPHY, Circuit Judges, and BOGUE,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

---

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

Sandra Smith appeals from a final order entered in the United States District Court[2] for the District of Minnesota, granting summary judgment in favor of Ashland, Inc., on her claims of discrimination based on race and gender, sexual harassment, and retaliation under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01, *et seq.*, and common law battery. Smith v. Ashland, Inc., No. 98-1290 (D. Minn. Feb. 2, 2000) (memorandum opinion and order). For reversal, Smith argues that the district court lacked subject matter jurisdiction. Alternatively, Smith argues that the district court erroneously disregarded relevant evidence establishing a genuine issue of material fact on her MHRA claims. For the reasons stated below, we affirm.

### Jurisdiction

Jurisdiction was originally proper in the district court under 28 U.S.C. § 1331, as a result of Smith's federal race and gender discrimination and retaliatory discharge claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, in addition to parallel claims under the MHRA, and a common law claim for battery. On October 15, 1998, the parties stipulated to an amendment of the original complaint, dismissing the federal discrimination claims as untimely but recognizing diversity jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1332. Jurisdiction is proper in this court under 28 U.S.C. § 1291. The notice of appeal was timely filed in accordance with Fed. R. App. P. 4(a).

### Background

The following statement of facts is based primarily upon the Brief of Appellant, supplemented by findings of the district court. On March 2, 1992, Ashland, Inc., the owner and operator of an oil refinery in St. Paul Park, Minnesota, hired Sandra Smith, a black woman, as a telephone operator. Prior to listing the job, the main office reprimanded John Blankenship, the hiring supervisor, for making a racist comment and

---

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

instructed him to hire on an equal opportunity basis. Blankenship, along with John Roman, co-supervised Smith from May 2, 1992, until the fall of 1994. Smith was promoted to office assistant within the first six months and received scores of 2 to 4 (ranging from "effective" to "very effective") on her performance reviews in 1992 and 1993. In November 1993, Smith received a promotion to the highest available clerical position in the refinery.

In December 1993, Smith applied for a "utility worker" position in the refinery, which required a formal structured testing and interview process. Smith met with John Jordan, the refinery's operations superintendent, who reacted negatively and made a sexist comment about her desire for the job. Smith complained to Blankenship, and Jordan was removed from Smith's interview and selection process. Smith was not one of the eight individuals selected from the nearly 200 people who applied for the job. Blankenship encouraged Smith to pursue technical training if she wanted a refinery position, which she did not do.

In March 1994, Roman criticized Smith's work performance and attitude. He decreased her job responsibilities and offered to transfer her to refinery sales, which Smith interpreted as a demotion. Smith declined the offer and complained to Ashland's EEO officer, Bea Smith, about Roman's criticism. Bea Smith investigated Smith's complaints. Smith did not object to the manner of this investigation.

In the fall of 1994, Smith's supervisors were replaced by Joe Lake and Jim Nelson. Nelson voiced dissatisfaction concerning several aspects of Smith's performance over the course of 1995, including her inaccurate recording of work time, tardiness, conflicts with a co-worker, and general poor performance. Smith believed that Nelson did not like her and treated her unfairly by failing to give her enough time to complete her assignments and by denying her request to change her work schedule, even though he had granted a white female employee's similar request. Smith's March 1995 performance review rated her between 2 and 4 and stated that she showed a lot

of initiative, completed a large volume of work, and was interested in learning new things and preparing for more responsibility. Several co-workers and a manager submitted statements remarking positively about the quality and quantity of Smith's work between 1994 and 1996. Smith did not receive a raise in 1995.

In August 1995, Smith collided in a hallway with a co-worker, Jeff DeLong. Smith alleges that DeLong intentionally bumped into her "with his penis," and later tried to scare her by laughing and speeding up toward her in his car in the parking lot. Smith complained to her supervisor, Joe Lake, about this incident. Ashland maintains that the contact was accidental and that Smith assured Lake that she was fine. Smith did not submit any evidence to indicate that the collision was intentional or sexual in nature.

In January 1996, Smith complained to Bea Smith about sexual innuendoes exchanged between DeLong and a female co-worker, Pam Zeipelt. According to Ashland, Bea Smith investigated the matter and reprimanded both DeLong and Zeipelt about inappropriate sexual discussions in the workplace.

In February 1996, Smith sought another "utility worker" position in the refinery. Because she failed to meet the minimum scores on a required skills test administered by an outside party, Smith did not qualify to submit an application. At the same time, Smith's supervisors rated her work as "marginal" and "unacceptable" in her performance review. Smith disagreed with the evaluation, refused to sign it, and accused Nelson and Lake of discriminating against her on the basis of her race. Smith was placed on a 90-day probationary period to improve her performance. Smith complained to Bea Smith that the job appraisal was unfair. Smith believed that her complaints about DeLong and Zeipelt's inappropriate conversations in the workplace prompted the poor performance review, a significantly increased workload, and decreased interaction with her supervisor, Joe Lake, who stopped speaking with her and communicated only via post-it notes. Bea Smith documented Smith's complaints.

At the end of March 1996, Nelson informed Smith that unless her performance improved immediately, she would be fired. Smith was terminated for lack of improvement on May 2, 1996.

On April 21, 1997, Smith filed a discrimination charge with the Minnesota Department of Human Rights ("MDHR"). On March 2, 1998, the MDHR issued a finding of no probable cause for Smith's allegations. Smith filed a complaint in federal district court on April 14, 1998, alleging race and gender discrimination and retaliatory discharge claims arising under Title VII, parallel claims under the MHRA, and a common law battery claim. On October 15, 1998, the parties stipulated to an amendment of the original complaint, dismissing the federal discrimination claims as untimely but recognizing diversity jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1332. Ashland moved for summary judgment on January 21, 2000.

As part of the record, Smith submitted affidavits from former Ashland employees who alleged that racism, sexism, and sexual harassment had occurred in the workplace. Smith did not submit any evidence to indicate that these former employees had ever complained to Ashland about their concerns.

The district court granted Ashland's motion for summary judgment on February 2, 2000, on the grounds that (1) Smith's claims of discriminatory employment practices under the MHRA were barred by a one-year statute of limitations; (2) Smith's claims did not constitute a continuing violation enabling her to circumvent the statute of limitations; (3) Smith failed to offer evidence of racial animus or gender bias on the part of the relevant decision-maker; (4) Smith failed to offer evidence showing a pretextual reason for her termination; (5) Smith's sexual harassment allegations did not constitute sexual harassment as a matter of law; (6) Smith failed to establish a *prima facie* case of retaliation; and (7) Smith failed to offer evidence that Ashland should have reasonably foreseen DeLong's potential for his alleged battery.

This appeal followed.

## Discussion

Standard of Review

We review the district court's order granting summary judgment *de novo*, viewing the evidence and the inferences drawn from the evidence in the light most favorable to the nonmoving party, to ensure "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Henery v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999).

28 U.S.C. § 1332 Subject Matter Jurisdiction

Smith argues that the district court lacked subject matter jurisdiction because federal jurisdiction was based solely upon the parties' stipulation to diversity jurisdiction, and such consent of the parties by itself does not satisfy subject matter jurisdiction. See Brief for Appellant at 20 (citing No Power Line, Inc. v. Minnesota Environmental Quality Council, 262 N.W.2d 312, 321 (Minn. 1997)). Smith contends that the parties are not completely diverse because Ashland owns and operates a refinery in Minnesota. We disagree.

While it is true that consent alone cannot confer subject matter jurisdiction, the parties stipulated to the fact of diverse citizenship based on Ashland's incorporation and principal place of business in Kentucky, which fulfills diversity requirements under 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"). Such a stipulation is controlling because citizenship based on the location of the principal place of business is valid for diversity purposes, and a corporation's additional presence in another state does not destroy diversity jurisdiction. Union

Pacific R.R. Co. v. 174 Acres of Land, 193 F.3d 944, 947-48 (8th Cir. 1999). As a result, we hold that the district court properly exercised diversity jurisdiction.

Statute of Limitations

Smith contends that the district court erred in failing to consider relevant evidence that fell outside the statute of limitations, including: (1) her complaints to her supervisor and the company's EEO officer of the sexual battery committed by DeLong in August 1995; (2) statements from a former Ashland employee regarding the reputation of Nelson, Smith's supervisor, for harassing employees because of their race and gender; (3) statements from former Ashland employees exhibiting company-wide racial and gender-based animus; and (4) statements from former Ashland employees that Ashland retaliated against employees who complained to management about illegal treatment. We disagree.

Smith's claims are governed by the MHRA, which provides a one-year statute of limitations for filing claims of unfair discriminatory employment practices, beginning on the date of the allegedly unfair or discriminatory act. Minn. Stat. § 363.06, subd. 3. Because Smith filed her charges with the MDHR on April 21, 1997, the only actionable events in this case were those which occurred after April 21, 1996, two weeks prior to her termination. The allegations upon which Smith relies refer to events that do not fall within the statutory period, and the district court properly disregarded them under Minnesota law. See Breen v. Norwest Bank Minnesota, N.A., 865 F. Supp. 574, 577 (D. Minn. 1994) (barring a claim filed under the MHRA more than one year after the alleged discriminatory practice); Diez v. Minnesota Mining & Mfg., 564 N.W.2d 575, 578-79 (Minn. Ct. App. 1997) (disallowing a claim of discrimination when the evidence of discrimination occurred more than a year before the claim was filed).

Continuing Violation Theory

Smith alleges that the district court erred in dismissing as discrete incidents the acts of race and gender discrimination that began before she was hired and continued after she was fired. Under Minnesota law, each individual discriminatory act which is part of a continuing violation triggers anew the time period for reporting the entire pattern of discrimination, "as long as at least one incident of discrimination occurred within the limitations period." Treanor v. MCI Telecommunications Corp., 200 F.3d 570, 573 (8th Cir. 2000). In order to prove a continuing violation of the MHRA, Smith must demonstrate either: (1) a series of related acts, one or more of which fell within the limitations period, or (2) the maintenance of a discriminatory system both before and during the limitations period. See Mandy v. Minnesota Mining, 940 F.Supp. 1463, 1468 (D. Minn. 1996). "[T]he critical question is whether 'any present violation exists' during the statutory period." Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1302 (8th Cir. 1997) (quoting United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977)).

Smith argues that Ashland followed a pattern of maintaining a discriminatory system throughout the workplace, including promotions, discipline and termination, which resulted in continuing violations of the MHRA, thereby preventing the statute of limitations from barring this action. See Brief for Appellant at 26, (citing Satz v. ITT Financial Corp., 619 F.2d 738, 743-44 (8th Cir. 1980) (holding that where "a presently maintained policy of discrimination" exists, the statutory limitations period does not bar a claim)). Smith specifically contends that her termination was the act occurring within the limitations period which continued Ashland's pattern of discrimination. However, Smith's termination alone is insufficient evidence to prove a pattern of discrimination, especially since Smith did not offer any evidence to show that other employees were systematically terminated due to their race and gender or that other employees were promoted in response to their race and gender. As such, Smith's termination is an "isolated event, [which] alone does not constitute a continuing violation." Jenson v. Eveleth Taconite Co., 130 F.3d at 1303.

Because a hostile work environment claim, by nature, constitutes a continuing violation, see Gipson v. KAS Snacktime Co., 83 F.3d 225, 229 (8th Cir. 1996), we may consider "background evidence from the pre-limitations period [which] may be relevant to illuminate whether [Smith's] work environment during the limitations period was sufficiently hostile." However, we may only examine such evidence if Smith can also demonstrate "evidence of a hostile working environment violation in the limitations period." Gipson v. KAS Snacktime Co., 171 F.3d 574, 580 (8th Cir. 1999). Because Smith did not allege any hostile working environment violation during the limitations period, the pre-limitation period evidence she proposes is irrelevant.

As a result, we agree with the district court that Smith failed to identify any act of discrimination which occurred during the limitations period that indicates a widespread system or policy of discrimination. We therefore hold that the district court did not err in finding no genuine issue of material fact that Ashland did not commit a continuing violation of the MHRA.

Retaliation Claim

Smith's retaliation claim remains as the only claim under the MHRA that was not barred by the statute of limitations. The MHRA, reflecting the language of Title VII, makes it illegal for an employer to retaliate against an employee who opposes an unlawful employment practice. See Minn. Stat. § 363.03, subd. 7. In order to establish a *prima facie* case of retaliation, Smith must demonstrate that: (1) she engaged in statutorily-protected conduct; (2) some adverse employment action was taken against her; and (3) the two were causally connected. See Bassett v. City of Minneapolis, 211 F.3d 1097, 1104-05 (8th Cir. 2000); Hubbard v. United Press Intern, Inc, 330 N.W. 428 (Minn. 1983). Smith has satisfied the first two elements: she complained to Ashland's EEO officer about race and gender discrimination, and she was subsequently fired.

Smith argues that the district court erred in failing to find a causal connection between her termination and her engagement in the protected activity of complaining about sexual harassment, sexual battery, and race discrimination in the workplace. She contends that the proximity in time (one month) between her January 3, 1996 complaint to the EEO officer about DeLong's alleged sexual battery and the subsequent poor performance review she received on February 14, 1996 is sufficient to create an inference of retaliation. See Brief for Appellant at 28 (citing Bassett v. City of Minneapolis, 211 F.3d 1097 (8th Cir. 2000) (holding that the temporal proximity between an employee's discrimination complaints and the employer's adverse action justified an inference of retaliation and presented a genuine issue of material fact precluding summary judgment)). However, as the district court pointed out, Ashland began documenting problems with Smith's performance as early as March 1994, which does not support an inference of retaliation based on temporal proximity. Moreover, Smith admits that she first complained about the sexual battery in August 1995. In addition, Smith's complaints were properly investigated by Ashland's EEO officer. Smith may not avoid criticism simply because she complained about the workplace. See Jackson v. St. Joseph State Hospital, 840 F.2d 1387, 1391 (8th Cir. 1988) (holding that protection from complaining about illegal activity in the workplace does not insulate an employee from the consequences of inadequate work performance).

Consequently, we agree with the district court that Smith failed to establish any genuine issue of material fact showing a causal connection between her complaints and her termination and that Ashland was entitled to summary judgment as a matter of law on Smith's retaliation claim.

## Conclusion

For the reasons stated, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.