Lynne M. RUSSELL, Plaintiff,

v.

ENTERPRISE RENT–A–CAR COMPANY OF RHODE ISLAND and Enterprise Rent–A–Car Company, Inc., Defendants.

No. CIV. A. 99–165–L.

United States District Court,
D. Rhode Island.

Sept. 11, 2001.

Andrew H. Berg, Catherine A. Sammartino, Sammartino & Berg, Providence, RI, for Plaintiff.

Robert G. Sullivan, Adler Pollock & Sheehan, Providence, RI, Susan J. Baronoff, Murtha Cullina Roche Carens & De-Giacomo LLP, Boston, MA, for Defendants.

## OPINION AND ORDER

LAGUEUX, District Judge.

Plaintiff Lynne M. Russell presents this Court with a multi-count complaint against defendants Enterprise Rent–A–Car Company of Rhode Island ("Enterprise RI") and its parent corporation, Enterprise Rent–A–Car Company, Inc. ("Enterprise National"). Plaintiff claims employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994), and the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28–5–1 *et seq.* (2000). In Count I plaintiff makes a disparate treatment claim, i.e. that she was the subject of discrimination regarding her hire, tenure, compensation, and terms and conditions of employment because of her gender. In Count II, plaintiff makes a disparate impact claim, allegedly stemming from defendants' advancement, disciplinary, and promotional policies. In Count III she alleges sexual harassment and a hostile working environment. Counts IV VI set forth corresponding state law claims. In plaintiff's final two counts, she makes federal and state law claims for retaliatory discharge.

This matter is before the Court on defendant Enterprise National's motion to dismiss all claims for lack of personal jurisdiction pursuant to Rule 12(b)(2), and for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Enterprise National moves for summary judgment under Rule 56(c). Defendant Enterprise RI moves for summary judgment under Rule 56(c) on all counts except Counts I and IV (the federal and state disparate treatment claims).

For the reasons that follow, the Court is persuaded by each of Enterprise National's arguments and grants judgment for that entity on all of plaintiff's claims. Enterprise RI's motion for summary judgment is granted on the disparate impact and sexual harassment claims. Enterprise RI's motion for summary judgment on plaintiff's retaliation claims is denied.

## I. Background and Procedural History

In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.[1] Viewing the evidence in that manner, the facts in this case are as follows:

Defendant Enterprise RI is a corporation with its principal place of business in Cranston, Rhode Island. The parent company, Enterprise National, has its principal place of business in St. Louis, Missouri. Enterprise National maintains a central corporate headquarters for Enterprise Rent-A-Car, the nation's largest car rental business. Enterprise RI is a wholly-owned subsidiary of Enterprise National. Enterprise RI rents and leases cars to the public using branch offices located throughout Rhode Island.

Plaintiff is a Rhode Island citizen. In November 1992, Enterprise RI hired her as a management trainee in its Warwick, Rhode Island branch. Between 1992 and 1995, plaintiff was promoted to Assistant Manager, Branch Rental Manger, and finally to Area Rental Manager of the Southern Rhode Island region. Plaintiff's immediate supervisor was Matthew Darrah ("Darrah"), a Vice President at Enterprise RI. Darrah completed all employee performance evaluations and made or recommended all hiring, promotion, and firing decisions, including those made with respect to plaintiff. Plaintiff always received positive and encouraging evaluations, consistently ranked number one in monthly sales, and led the overall average in operating profit figures and customer service for her area. In her November 1995 evaluation, it was noted that all aspects of her performance met or exceeded the requirements and expectations of her position. Darrah conducted this evaluation and specifically commented on plaintiff's strong leadership abilities, good decision-making skills, and her ability to command trust and respect by example. Plaintiff was given a performance-based pay raise in February of 1996.

Four months later, without any notice or warning, plaintiff was offered three options: accept a substantial demotion to Branch Regional Manager, accept a demotion to a low-level administrative position, or accept termination with severance pay. The only reasons given to justify these options were that plaintiff "lacked presence" and a fellow employee had "beaten her" in establishing a new branch location in Bristol, Rhode Island. Plaintiff refused both demotions but accepted her severance package on June 13, 1996. A male employee, Michael Renzi, was immediately promoted to plaintiff's position.

During her employment at Enterprise RI, plaintiff was treated differently than other male employees. Enterprise National publicly advertises its preference for "athletes, fraternity types-especially fraternity presidents, social directors," and "ex-college frat house jocks." Darrah reg-

---

**1.** Defendants have complied with their obligations under Local Rule 12.1 by filing a statement of undisputed facts. Although plaintiff did not file a separate 12.1 statement of disputed facts, she included a section entitled "Issues of Material Fact," in her memorandum opposing defendants' motion for summary judgment. The Court finds this sufficient for purposes of this case.

ularly organized and participated on all-male softball teams, golf tournaments, and poker games designed to boost group morale and provide opportunities to socialize with upper management. The women in the office were never invited. In addition, Darrah routinely gave male employees the benefit of advance notice and corrective counseling regarding their performance problems. A male manager, Brendan Kane, once commented that he had spent so much time in Darrah's office receiving constructive criticism that his "ass hurt." However, plaintiff was denied a similar opportunity to work with Darrah and take corrective action. The only time Darrah was unhappy with plaintiff's performance, he abruptly offered her one of the three options discussed above.

Plaintiff's working environment at Enterprise RI also included various offensive and inappropriate actions. During meetings with Darrah and other Area Rental Managers, the men joked about sleeping with each other's wives and referred to the female employees as "hotties," and commented on female employees' breast and body sizes. Offensive photographs were passed around at one particular meeting. In one photograph of two male Area Managers, one man was on all fours and the other appeared to be entering him from behind. In another photograph, one male manager was holding a dildo up to his genital area while the other man had his mouth open and tongue out. On another occasion, plaintiff overheard rumors about her sleeping with another co-worker. She also heard Darrah discussing a sexual "threesome" in which he was supposedly involved.

On or about January 27, 1997, plaintiff filed a charge of discrimination with the Rhode Island Commission for Human Rights (RICHR) and the Equal Employment Opportunity Commission (EEOC).

Each agency issued plaintiff a notice of right to sue. Plaintiff filed her complaint with this Court on April 2, 1999. Thereafter, defendants filed these motions which were briefed and argued. The matter is now in order for decision.

## II. Standards for Decision

Enterprise National moves to dismiss all claims for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. In ruling on a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences. *Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir.1998). Under Rule 12(b)(6), dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Enterprise National also moves, in the alternative, for summary judgment on all counts. Therefore, the Court will consider that motion under Rule 56(c) of the Federal Rules of Civil Procedure. Defendant Enterprise RI seeks summary judgment on Counts II, III, V, VI, and VII. Enterprise RI seeks summary judgment under Rule 56(c), but its motion is more properly considered under Rule 56(d) as a motion for partial summary judgment since it has not moved against Counts I and IV.

Partial summary judgment under Rule 56(d) is separate and distinct from a Rule 56(c) motion. Rule 56(d) provides the court with a tool to "narrow the factual issues for trial." *Rivera–Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 747 (1st Cir. 1995). The rule provides that when "judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court ... [may] ascertain

what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." Fed.R.Civ.P. 56(d). Based on this inquiry, the court may then devise an appropriate order "directing such further proceedings in the action as are just." *Id.*

The standard for ruling on a Rule 56(d) motion is identical to that used to decide a motion under Rule 56(c). *URI Cogeneration Partners, L.P. v. Bd. of Governors for Higher Educ.*, 915 F.Supp. 1267, 1279 (D.R.I.1996) (citing *Flanders + Medeiros Inc. v. Bogosian*, 868 F.Supp. 412, 417 (D.R.I.1994), *aff'd in part, rev'd in part*, 65 F.3d 198 (1st Cir.1995)). Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the court must view the facts in the record and all inferences therefrom in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). Summary judgment is only available when there is no dispute as to any material fact and only questions of law remain. *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996). A material fact is one

"that might affect the outcome of the suit under the governing law." *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the burden of showing that no evidence supports the nonmoving party's position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III. Discussion

*Personal Jurisdiction*

 Enterprise National moves to dismiss all claims for lack of personal jurisdiction. The First Circuit has set forth a prima facie standard for ruling on motions to dismiss for lack of personal jurisdiction. *Microfibres, Inc., v. McDevitt–Askew*, 20 F.Supp.2d 316, 319 (D.R.I.1998) (citing *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir.1992)). The district court does not act as a fact finder and may only consider whether the plaintiff has produced evidence that, if credited, is enough to support the finding of all facts essential to personal jurisdiction. *Id.* The plaintiff may not rest on its pleadings and must make its case based on the facts set forth in the record. *Id.* at 319–20. With this in mind, the Court will apply the following prima facie standard:

> Whether a federal court has personal jurisdiction over a defendant depends upon two criteria: (1) whether the mandates of the forum state's long-arm statute have been satisfied, and (2) whether the defendant has been hailed into the particular court in accordance with the due process clause of the Fourteenth Amendment to the United States Constitution.

*Levinger v. Matthew Stuart & Co.*, 676 F.Supp. 437, 439 (D.R.I.1988); *see also Barrett v. Lombardi*, 239 F.3d 23, 26 (1st

Cir.2001). The Rhode Island Supreme Court has held that the state's long-arm statute, Rhode Island General Laws § 9–5–33 (2001), reaches to the full extent of the Fourteenth Amendment. *Microfibres,* 20 F.Supp.2d at 320 (citing *Conn v. ITT Aetna Fin. Co.,* 105 R.I. 397, 252 A.2d 184, 186 (1969)). Therefore, it is only necessary to examine the second criterion stated above.

■ The Supreme Court announced the following basic standard regarding the Fourteenth Amendment's boundaries on personal jurisdiction:

> Due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Int'l. Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

■ A minimum contacts analysis begins with two questions. First, were the defendant's activities in the forum continuous and systemic or sporadic and casual? *Thompson Trading Ltd. v. Allied Lyons PLC,* 123 F.R.D. 417, 427 (D.R.I.1989). Second, is the cause of action before the court related or unrelated to the defendant's conduct in the forum? *Id.*

■ With respect to the first question, plaintiff has not established that her discrimination claim is at all related to Enterprise National's conduct in Rhode Island. Plaintiff's claims are grounded solely on the course of events at Enterprise RI. Plaintiff has failed to proffer evidence that Enterprise National took part in hiring or promoting her. There is no evidence that Enterprise National communicated with plaintiff at the time plaintiff was given the option of accepting one of two demotions or termination. In addition, there is nothing before this Court to indicate that Enterprise National had any control over the Rhode Island workplace. If anything, Enterprise National's contact with the Rhode Island operation was sporadic as company executives made yearly visits in an advisory or supportive capacity. Since Enterprise National lacks continuous and systemic contacts with Rhode Island, this Court does not have general personal jurisdiction over Enterprise National.

■ Turning to the second question, plaintiff has failed to establish specific personal jurisdiction by demonstrating that Enterprise National engages in a continuous and systematic course of conduct in Rhode Island and that plaintiff's claims arose from such contacts. Plaintiff relies on the fact that Enterprise RI is National's wholly owned subsidiary and thus argues that Enterprise National has the required Rhode Island contacts because of its subsidiary's activities.

■ In determining whether jurisdiction is proper over a parent corporation solely because of its subsidiary's contacts with the forum state, "[t]here is a presumption of corporate separateness that [may] be overcome by clear evidence." *Donatelli v. Nat'l. Hockey League,* 893 F.2d 459, 465 (1st Cir.1990) (quoting *Escude Cruz v. Ortho Pharm. Corp.,* 619 F.2d 902, 905 (1st Cir.1980)). Cases where personal jurisdiction has been upheld based on the parent-subsidiary relationship have turned on some "plus factor" beyond the subsidiary's mere presence as a member of the corporate family. *Donatelli,* 893 F.2d at 465–66.

■ Plaintiff argues that an agency relationship between Enterprise National and Enterprise RI provides the requisite

"plus factor" to sustain this Court's exercise of jurisdiction. The Rhode Island Supreme Court has developed three elements to establish an agency relationship. First, the principal must manifest that the agent will act for him. *Butler v. McDonald's Corp.*, 110 F.Supp.2d 62, 66 (D.R.I.2000). Second, the agent must accept the undertaking. *Id.* Third, the parties must agree that the principal will control the undertaking. *Id.* This Court recently noted that the existence of an agency relationship turns on whether or not one party has a right to control the other. *Id.* Plaintiff has not proffered any evidence to satisfy any of these elements. Accordingly, there is nothing to indicate that there was an agreement between Enterprise National and Enterprise RI that the parent would control the subsidiary.

▇▇▇▇ An agency relationship may also be established through participation in the employment decision that forms the basis of the discrimination claim. *Lamirande v. Resolution Trust Corp.*, 834 F.Supp. 526, 529 (D.N.H.1993). Plaintiff fails to establish an agency relationship under this test as well. There is no evidence that Enterprise National had any role in the hiring, firing, or promotional decisions at issue in this case. Therefore, this Court does not have personal jurisdiction over Enterprise National based on the existence of an agency relationship between the defendants.

▇▇▇▇ Plaintiff also asks this Court to pierce the corporate veil and equate jurisdiction over Enterprise RI with jurisdiction over Enterprise National. Plaintiff relies on defendants' parent-subsidiary relationship and the fact that the two share common members on their respective boards of directors. However, the case law is clear that this is not enough. The concept of limited liability is a basic principle of corporate law. *Velazquez v. P.D.I.*

*Enterp. Inc.*, 141 F.Supp.2d 189, 193 (D.Puerto Rico 1999). Courts are hesitant to disregard the independent corporate structure between a parent corporation and its subsidiaries. *Id.*

The Court finds this case analogous to the situation presented in *Thompson Trading Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417 (D.R.I.1989). In *Thompson Trading*, this Court held that ownership of a subsidiary and common directors were not enough to pierce the corporate veil and find specific jurisdiction over a non-resident parent corporation. *Id.* at 427. The United States Supreme Court has been clear that the presence of a subsidiary in the forum state does not necessarily subject the parent corporation to that state's jurisdiction. *Id.* (citing *Cannon Mfg. Co. v. Cudahy Co.*, 267 U.S. 333, 336, 45 S.Ct. 250, 69 L.Ed. 634 (1925)).

The First Circuit addressed this issue in *De Castro v. Sanifill, Inc.*, 198 F.3d 282 (1st Cir.1999). The plaintiffs sued a defendant corporation for injuries caused by a waste disposal truck owned by one of the defendant's subsidiaries. *Id.* at 283. The Court of Appeals ruled that in order to establish jurisdiction over a parent corporation, there must be "strong and robust evidence" of parental control over the subsidiary rendering the latter a "mere shell." *Id.* at 284 (quoting *Escude Cruz*, 619 F.2d at 905). The Court found no evidence to establish that the parent corporation owned or operated the truck or controlled the daily activities of its subsidiary. *Id.* at 283. Mere ownership of local corporate entities and the fact that the parent and subsidiary shared common officers and directors were not enough control to warrant piercing the corporate veil. *Id.*

Plaintiff simply has failed to establish the "strong and robust evidence" of parental control required by the *De Castro* standard. There is no evidence that En-

terprise National has any control over Enterprise RI's daily employment decisions. Enterprise RI has its own recruiters and administers its own personnel policies. Enterprise National provides contract forms and suggests company benefit policies. However, the subsidiaries are free to and do alter them to fit their specific needs. Enterprise RI handles its own marketing, accounting, budgeting, and training. It purchases the vehicles in its fleet and takes title to them in its own name. Enterprise National has no role in deciding what vehicles to purchase, how many, and is not responsible for their sale. Finally, there is no commingling of finances between defendants. The two do not share employees, services, records, office space, or equipment, with the exception of a mainframe computer system that serves as a conduit for information.

Enterprise RI is a separate and independent entity and is not a "mere shell" of its parent company. Plaintiff has not presented sufficient evidence to pierce the corporate veil and cannot rely on Enterprise RI's contacts with Rhode Island to justify jurisdiction over its non-resident parent.[2]

■ Another "plus factor" which might allow this Court to exercise personal jurisdiction over Enterprise National is the alter ego rule. Under the alter ego rule, a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction. See Rivera Sanchez v. Mars Inc., 30 F.Supp.2d 187 (D.Puerto Rico 1998). If the court finds

one entity to be the alter ego of the other, jurisdiction over the subsidiary results in jurisdiction over the non-resident parent.

■ To determine whether a parent corporation and its subsidiary maintain separate corporate identities, a court examines factors that demonstrate whether corporate formalities have been observed. These factors include whether the parent corporation and its subsidiary were separately incorporated, had separate boards of directors, maintained separate financial records, and had separate facilities and operating personnel. de Walker v. Pueblo Int'l, Inc., 569 F.2d 1169, 1171 (1st Cir. 1978).

Essentially, the determination of whether a parent corporation is the alter ego of its subsidiary (or vice-versa) involves the same inquiry employed in a veil-piercing analysis. As the preceding discussion made clear, Enterprise National and Enterprise RI keep their corporate identities separate and distinct. Although the two corporations share the same president, they maintain separate offices, employ their own employees, and do not commingle finances. As a result, personal jurisdiction over Enterprise National cannot be established under the alter ego rule.

Plaintiff has failed to show that Enterprise National's Rhode Island activities meet the prima facie standard for personal jurisdiction. Therefore, this complaint against Enterprise National should be dismissed for lack of personal jurisdiction.

*Exhaustion of Administrative Remedies*

Enterprise National also argues that plaintiff has failed to state a claim on which relief can be granted. The Court

---

**2.** Plaintiff argues that the defendants' existence as an integrated enterprise establishes jurisdiction over Enterprise National. This theory goes to liability. The case law provides little support for transplanting this theo-

ry from the context of liability to that of jurisdiction. *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1096 (1st Cir.1992).

will rule on this issue to prevent unnecessary litigation.

Under Title VII, a civil action may only be brought against the "respondent named in the charge." 42 U.S.C. § 2000e–5(f)(1)(1994); *Maldonado–Cordero v. AT & T,* 73 F.Supp.2d 177, 185 (D.Puerto Rico 1999). Regulations accompanying Title VII explain that the contents of an administrative charge should contain "[t]he full name and address of the person against whom the charge is made." 29 C.F.R. § 1601.12(a)(2)(2000). The purpose for the filing requirement is two-fold. First, it operates to put the defendant on notice of the charges against it. Second, it gives the defendant an opportunity to participate in voluntary conciliation and avoid a subsequent lawsuit. *Maldonado–Cordero,* 73 F.Supp.2d at 185.

Enterprise National argues that plaintiff cannot bring this suit against it because she failed to exhaust her administrative remedies by failing to name Enterprise National in her administrative charges before the EEOC and RICHR. Plaintiff filed an administrative charge with the RICHR naming "Enterprise Rent–A–Car" as defendant and using an East Providence, Rhode Island address. Plaintiff's EEOC charge named "Andrew Taylor, President of Enterprise Rent A Car," using the same East Providence address. Enterprise National argues that it had no notice of any claims against it and plaintiff cannot now expand her claim to include a defendant not named in the administrative charge. Plaintiff argues that Enterprise National and Enterprise RI are so intertwined that, under the identity of interest exception, notice to one defendant presumes notice to the other. Plaintiff also relies on the fact that she named Enterprise National's President, Andrew Taylor, in her administrative charge and previously wrote him a letter complaining of discrimination and wrongful discharge at Enterprise RI. The Court finds neither of plaintiff's arguments persuasive.

The First Circuit has not addressed the question of what situations will satisfy the filing requirement absent compliance with the literal terms of the statute. However, district courts within the First Circuit have ruled that even if a party is not named as an official respondent in the administrative complaint, a civil action may be maintained if the party is named in the narrative section or the accompanying affidavit. *Maldonado–Cordero,* 73 F.Supp.2d at 186; *Curran v. Portland Superintending Sch. Comm.,* 435 F.Supp. 1063, 1074 (D.Me.1977).

In *Chatman v. Gentle Dental Center,* 973 F.Supp. 228 (D.Mass.1997), the Court dismissed claims against the individual defendants not named in the administrative charge. The Court ruled that whether a party was properly identified at the administrative level must be determined by looking at the charge as a whole. *Id.* at 234. Thus, a party that was not named in the administrative filing may be named as a defendant in a subsequent civil action only where the charge put the unnamed party on notice, its conduct at issue, and gave the party an opportunity to participate in conciliation. *Id.* at 235.

The affidavit accompanying plaintiff's administrative complaint does not put Enterprise National's conduct at issue. Plaintiff's administrative complaint lacks any reference to Enterprise National and does not state any facts from which Enterprise National's involvement could be inferred. Plaintiff's administrative filing only refers to events which occurred during her tenure with Enterprise RI. Plaintiff speaks of different positions she held in Rhode Island and alleges disparate treatment and a hostile work environment in Rhode Island. Since Enterprise National

is completely absent from plaintiff's administrative complaint, allowing a suit to proceed against that entity would frustrate the dual purpose of the administrative filing requirements.

 Plaintiff argues that under the identity of interests exception, Enterprise National had notice of her charge given its involvement with Enterprise RI. Since the First Circuit has not yet addressed this exception, this Court looks to the Second Circuit's decision in *Johnson v. Palma*, 931 F.2d 203 (2d Cir.1991).

 The identity of interest exception permits a Title VII action to proceed against a defendant who was not originally named in the administrative filing if there is a clear identity of interest between the named and unnamed defendants. *Id.* at 209. To determine whether or not an identity of interest exists, a court must examine the following factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 209–10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)). In *Johnson*, the Court found that the plaintiff had written to the President of the International Union explaining his complaints and therefore knew of and could have named the Union at the administrative stage. *Id.* at 210. The interests between the two parties were not so similar as to render conciliation by both unnecessary. *Id.* Factual statements did not implicate the unnamed defendant and gave no notice of possible charges against it. *Id.* Therefore, the identity of interest exception did not apply. *Id.*

An application of this test yields a similar result in the case at bar. Plaintiff wrote to the President of Enterprise National, Andrew Taylor, advising him of her complaints prior to filing her administrative charges. Plaintiff knew of Enterprise National's role and could have specifically named it in her administrative complaint. While the content of plaintiff's administrative charge was sufficient to give Enterprise National notice of a charge against its subsidiary, plaintiff's failure to even mention Enterprise National in her factual statement did not give it any knowledge of a possible charge against it. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989) (holding that dismissal of a party not named in the administrative charge was proper, despite the fact that administrative charge put party on notice). Therefore, the identity of interests exception does not apply here.

For these reasons, it is the determination of this Court that plaintiff failed to exhaust her administrative remedies as required by 42 U.S.C. § 2000e–5(f)(1). Enterprise National was not named as a respondent at the administrative stage and was not afforded notice or an opportunity to conciliate prior to this lawsuit. Therefore, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all claims against Enterprise National must be dismissed for failure to state a claim upon which relief can be granted.

*Employer Status Under Title VII*

In the alternative, Enterprise National has moved for summary judgment on all counts, arguing that there is no genuine issue of material fact bearing on it's liability under Title VII. Title VII provides that:

> [i]t shall be an unlawful employment practice for an *employer* to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1)(1994)(emphasis added).

 In order to be held liable under Title VII, Enterprise National must qualify as plaintiff's employer. The First Circuit has held that a parent company sued under Title VII is entitled to summary judgment in the absence of a genuine issue of material fact as to whether it had sufficient control over the subsidiary to be liable for the alleged discrimination. *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 26–27 (1st Cir.1980). This Court finds that there is no material issue of fact regarding Enterprise National's employer status and rules that summary judgment should be granted to that defendant even if the Court has jurisdiction of this matter.

While the First Circuit has not ruled on the proper test to be utilized in determining employer status under Title VII, it has referred to the integrated-enterprise test, the corporate law "sham test" and the agency test.[3] *Romano v. U–Haul Int'l*, 233 F.3d 655, 664–65 (1st Cir.2000). The integrated-enterprise test is the standard adopted, or at least applied, by a majority of circuits that have reached this issue. *Id.* at 665.

 Under the integrated-enterprise test, two entities may be sued as a single employer if the following four factors are present: interrelation of operations, common management, centralized control of labor operations, and common ownership. *Id.* at 666. In applying this test, factors such as sales, marketing, and advertising may be considered under the interrelation of operations prong insofar as they establish direct parental involvement in the subsidiary's daily decisions. *Id.* at 667. While the circuits are nearly unanimous in their view that control over employment decisions is a primary consideration in evaluating employer status, they differ as to the amount of control needed to satisfy this element. *Id.* at 666. *See e.g. Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1244–45 (11th Cir. 1998) (finding that control of employment decisions is crucial under the integrated-enterprise test); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1071 (10th Cir.1998) (holding that parent must exercise unusual degree of control over the subsidiary); *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir.1997) (focusing on whether the parent corporation was the final decision-maker).

 The First Circuit has adopted a more flexible approach, focusing on the extent to which the parent exerts "an amount of participation [that] is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." *Romano*, 233 F.3d at 666 (citations omitted). Under the control of labor relations prong,

---

**3.** The corporate law "sham" test is not applicable in this case. Plaintiff has not presented any evidence to demonstrate that Enterprise National's affiliates were formed for the primary purpose of shielding it from liability under anti-discrimination laws. *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 941 (7th Cir.1999).

the critical question is which entity made the final decision regarding the employment matters of the person claiming discrimination. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995).

The First Circuit applied the integrated enterprise test in *Romano* and found that the parent company exercised enough control over its wholly-owned subsidiary to be held liable under Title VII. *Romano*, 233 F.3d at 668. In *Romano*, the defendants shared three common directors and International received daily reports and revenues from U Haul Maine's transactions. *Id.* at 667. International set equipment rates and provided the subsidiary with accounting, legal, marketing, budgeting, and training services. *Id.* International also set personnel policies, the wage scale, payroll, and approved all rehires. *Id.* In addition, International handled all complaints of discrimination, sexual harassment, and requests for leaves of absence from its central office. *Id.* at 667–668.

This case is clearly distinguishable from *Romano*. Enterprise RI maintains its own accounting, budgeting, marketing, payroll, and legal counsel. Enterprise RI does not need Enterprise National's permission or advice before hiring, firing, or rehiring employees.[4] There is no evidence that Enterprise National made the final decision regarding plaintiff's employment. Plaintiff's complaint alleges that Darrah, an Enterprise RI employee, made and presented the decision regarding plaintiff's employment. Defendants' affidavits establish that Darrah made this decision alone and that Enterprise National only knew of plaintiff's claims after she filed this lawsuit.

This case is similar to the situation presented in *Mas Marques*, where the plaintiff brought a Title VII claim against Digital Equipment and its parent company. *Mas Marques*, 637 F.2d at 24. The First Circuit held that the parent was not involved in formulating Digital's personnel policies, advertising, or marketing strategies. *Id.* at 26. The parent company did express a willingness to investigate the plaintiff's discrimination complaint but did not concede responsibility for its subsidiary's actions. *Id.* at 27–28. The Court found the plaintiff's statements about the corporate relationship conclusory. *Id.* at 28. Summary judgment was granted because there was no recognized theory to hold the parent company liable under Title VII. *Id.* at 27.

In the present case, plaintiff relies on similar conclusory allegations regarding the corporate relationship between Enterprise National and Enterprise RI. Plaintiff presented corporate certifications to show common members of the board of directors and relies on the inter-subsidiary movement of upper management officials. Given the First Circuit's decisions in *Romano* and *Mas Marques*, this is not enough to establish that Enterprise National exercises direct control over Enterprise RI. The relationship between Enterprise National and Enterprise RI is similar to that of Digital and its parent in *Mas Marques*. Like the plaintiff in *Mas Marques*, plaintiff here complained to Enterprise National and asked it to investigate her allegations of discrimination, but Enterprise National never conceded responsibility for its subsidiary's alleged actions. Therefore, the integrated-enterprise theory does not ap-

---

**4.** Darrah's deposition leaves open the question of whether he consulted with Enterprise National before offering plaintiff her three employment options on June 13, 1996. However, this alone does not establish Enterprise National's control over Enterprise RI's daily employment decisions and does not raise an issue of material fact.

ply to impose Title VII liability upon Enterprise National.

Plaintiff also relies on common law agency principles to establish Enterprise National's liability. Since the Court previously addressed this issue in the context of personal jurisdiction, it incorporates that discussion by reference.

Enterprise National has demonstrated that there are no genuine issues of material fact regarding this "employer" issue. Enterprise National was clearly not plaintiff's employer. Consequently, Enterprise National is entitled to judgment on all claims asserted against it by plaintiff on this basis.

*Count II: The Disparate Impact Claim*

The remaining defendant, Enterprise RI, moves for summary judgment on Count II of plaintiff's complaint. It argues that plaintiff's disparate impact claim is procedurally barred because plaintiff failed to make allegations of disparate impact in her administrative filings before the EEOC and the RIHRC.

 A claim may not be presented in federal court prior to an administrative investigation. 42 U.S.C. § 2000e–5(c)(1994). The scope of a federal action may include acts of discrimination that an administrative investigation would reasonably be expected to uncover. *Stephenson v. State St. Bank & Trust Co.,* 924 F.Supp. 1258, 1276 (D.Mass.1996). The underlying rationale for this rule is the same as the reason for specifically naming a defendant in the administrative charge-to provide notice to the employer and encourage settlement of the dispute through conciliation and voluntary compliance. *Id.* at 1276 (quoting *Watlington v. Univ. of Puerto Rico,* 751 F.Supp. 318, 324 (D.Puerto Rico 1990)).

██ In *Stephenson,* the plaintiff's administrative complaint alleged that she ex-perienced "unfair treatment," but did not include a specific disparate impact claim. *Id.* at 1276. The Court ruled that the controlling factor was not what the administrative agency did, but what it was given the opportunity to do. *Id.* In applying this rule, the Court paid particular attention to the factual statement accompanying the administrative charge, ultimately finding that the plaintiff's factual statement centered on her discharge and how she was treated. *Id.* This led the Court to distinguish between disparate impact and disparate treatment claims. A plaintiff establishes a disparate impact claim by pinpointing a specific employment policy that is neutral on its face but has a discriminatory effect on a class of people. *Id.* at 1277. In contrast, a disparate treatment claim arises when an employee is treated differently than others because of her sex or another protected characteristic. *Id.*

The administrative complaint in *Stephenson* did not mention the treatment of other employees or any neutral employment policy with a discriminatory impact on a protected class. *Id.* The Court concluded that the scope of the investigation that could reasonably be expected to evolve from the plaintiff's administrative charge did not encompass a disparate impact claim. *Id.* Therefore, the disparate impact claim was procedurally barred and the defendant's motion for summary judgment was granted. *Id.* at 1278.

In the instant case, plaintiff used language in her administrative filing similar to the language used by the plaintiff in *Stephenson.* In particular, plaintiff stated "during the time I worked for Enterprise, I was treated differently than similarly situated male employees." Plaintiff failed to articulate the subjective promotional and disciplinary policies later alleged in her complaint and argued before this Court. Consequently, neither Enterprise

RI nor the administrative agency had notice of a disparate impact claim and were not given the opportunity to facilitate or participate in conciliation.

The Court finds that there is nothing in plaintiff's administrative complaint to raise the issue of or reasonably infer a disparate impact claim. To allow plaintiff to litigate a claim only tangentially related to those in her administrative charge would thwart the EEOC's ability and authority to facilitate the investigation and resolution of Title VII disputes. *Vingi v. State*, 991 F.Supp. 44, 51 (D.R.I.1997). Therefore, Enterprise RI's motion for summary judgment is granted as to Count II.

In the alternative, Enterprise RI argues for summary judgment because there are no issues of material fact on the merits of plaintiff's disparate impact claim. This is an additional ground for granting summary judgment on Count II.

Congress clarified the burden of proof in disparate impact cases in the 1991 amendments to Title VII. Under the amendment, an unlawful employment practice creates a disparate impact only if:

> the complaining party demonstrates that the respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or the complaining party demonstrates an alternative employment practice and the respondent refuses to adopt it.

42 U.S.C. § 2000e–2 (k)(1)(A)(i-ii) (1994).

 The plaintiff's burden in a disparate impact case follows the framework set by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plain-

tiff's prima facie case creates an inference of discrimination shifting the burden of production to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *Id.* at 802, 93 S.Ct. 1817. The burden then shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. *Id.* at 802–803, 93 S.Ct. 1817.

 The First Circuit addressed this burden-shifting framework in the context of a Rule 56 motion in *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816 (1st Cir.1991). If the plaintiff fails to make out her prima facie case, the inference of discrimination never arises, and summary judgment should be granted. *Id.* at 824; *Menard v. First Sec. Servs. Corp.*, 848 F.2d 281, 285–87 (1st Cir.1988). If the plaintiff makes out a prima facie case and the defendant has not offered a legitimate nondiscriminatory reason for the adverse action, then there is an issue of material fact regarding the inference of discrimination and summary judgment should be denied. *Mesnick*, 950 F.2d at 824.

 In this case, plaintiff's disparate impact claim is premised on defendant's disciplinary and promotional policies. Plaintiff alleges that Enterprise RI "proudly and openly cultivated a company-wide culture favoring men" and lacked objective criteria for promotions. Plaintiff cites a *Forbes Magazine* article in which an Enterprise executive stated "we hire from the half of the college class that makes the upper half possible. We want athletes, fraternity types-especially fraternity presidents and social directors." Plaintiff alleges that defendant's hiring, promotional, and disciplinary policies are facially neutral but have a discriminatory effect on women.

 In *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101

L.Ed.2d 827 (1988), the Supreme Court granted certiorari to resolve the issue of whether or not subjective or discretionary employment policies could be analyzed under the disparate impact model. Watson, an African American bank teller, was denied four separate promotions to a supervisory position. *Id.* at 982, 108 S.Ct. 2777. A Caucasian applicant won the promotion each time. *Id.* Watson alleged that the bank had not developed formal or precise selection criteria and instead relied on supervisors' subjective judgments. *Id.* In resolving a circuit conflict, the Supreme Court held that subjective or discretionary employment practices could be analyzed under a disparate impact approach in appropriate cases. *Id.* at 991, 108 S.Ct. 2777. In order to make out a disparate impact case, a plaintiff must identify the specific employment practice being challenged and establish causation. *Id.* at 994, 108 S.Ct. 2777.

At the outset, the Court notes that plaintiff has not provided any evidence on the issue of causation. For this reason alone, the Court must grant Enterprise RI's motion for summary judgment on the disparate impact claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial).

Plaintiff argues that Enterprise RI's lack of objective criteria precludes women as a class from rising to the next level within the company. However, plaintiff presents no evidence that any woman applied for or was denied a promotion. Although Allison Paul was abruptly asked to resign without explanation, she was quickly welcomed back with apologies. David Moses stated that he heard that the rental division was not a friendly environment for women wanting to move into management and knew of no woman promoted beyond area manager. This evidence is not sufficient to raise an issue of material fact regarding Enterprise RI's use of subjective criteria in employment decisions.

■ The Supreme Court was clear in *Watson* that the plaintiff must produce substantial statistical disparities in order to raise an inference of causation. *Watson,* 487 U.S. at 995, 108 S.Ct. 2777. A neutral policy with an adverse effect on an employee or even a few employees does not constitute a prima facie case on disparate impact. *Stephenson,* 924 F.Supp. at 1277–78 (quoting *Holt v. Gamewell Corp.,* 797 F.2d 36, 38 (1st Cir.1986)).

Simply put, plaintiff's evidence does not show that the alleged practice excluded women because of their gender. Instead, plaintiff's pleadings relate to her tenure and termination at Enterprise RI. She alleges wrongful termination and maintains that she was fired to prevent her promotion and was immediately replaced by a man, Michael Renzi. Plaintiff's complaint states that all similarly situated men were given promotions, additional responsibilities, and significant financial rewards despite the fact that plaintiff's performance was equal to or above theirs. Plaintiff alleges that she did not receive the same support, constructive criticism, and opportunities for improvement afforded to the men.

The Rhode Island Supreme Court considered a similar argument in *Newport Shipyard Inc. v. Rhode Island Comm'n for Human Rights,* 484 A.2d 893 (1984). The claimant, an African American male, argued that he was denied the benefits of written warnings and opportunities for improvement that were given to Caucasian workers. *Id.* at 896. The Rhode Island Supreme Court held that the plaintiff's allegations fell into the disparate treat-

ment rather than the disparate impact category. *Id.* at 898.

This Court arrives at the same conclusion in this case. Most if not all of plaintiff's arguments relate to how she was treated and do not show a disparate impact on women as a protected class. Plaintiff argues that women were excluded from the all-male softball teams, golf tournaments, and poker games often organized by their supervisor, Matthew Darrah. Assuming, without deciding, that women were precluded from participating in these social events designed to boost morale and afford an opportunity to socialize with upper management, plaintiff fails to take the next step and demonstrate that this policy caused an injury to women as a class. Since plaintiff has not demonstrated an ability to carry her burden of proof on the disparate impact claim at trial, Enterprise RI's motion for summary judgment on Count II must be granted on this basis as well.

*Count III: The Sexual Harassment Claim*

■■ Enterprise RI also moves for summary judgment on Count III, which alleges sexual harassment and a hostile work environment. Since Rhode Island is a deferral jurisdiction, a plaintiff alleging a hostile work environment under Title VII must file her claim within 300 days of an act of discrimination. 42 U.S.C. § 2000e–5(3)(1994); *O'Rourke v. City of Providence,* 235 F.3d 713, 730 (1st Cir.2001). In general, a plaintiff cannot litigate claims based on conduct outside this period. *O'Rourke,* 235 F.3d at 730. The limitations period "protects employers from the burden of defending claims arising from employment decisions that are long past." *Id.* (citations omitted).

Enterprise RI makes two arguments in support of its motion for summary judgment on Count III. First, it argues that plaintiff's claim is untimely. Second, it

contends that any acts that are timely do not rise to the level of sexual harassment or create a hostile working environment.

■ In order to survive a motion for summary judgment, the plaintiff must show that a discriminatory act occurred within the 300 days preceding the administrative filing, or that there are facts which, if believed, will toll the limitations period and excuse the delay. *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 182 (1st Cir.1989). In *Mack,* the First Circuit upheld the district court's grant of summary judgment on the plaintiff's discrimination claim because the plaintiff could not identify any discriminatory act within the filing period. *Id.* at 187.

■ Plaintiff filed her administrative complaint on January 27, 1997 alleging discriminatory actions between June 1, 1996 and June 13, 1996. Since there are less than 300 days between June 13, 1996 and January 27, 1997, plaintiff's claim is timely. However, plaintiff fails to identify any act of sexual harassment within the limitations period. Plaintiff's complaint includes a statement entitled "Enterprise Rent A Car Culture," which alleges that different events and comments created a hostile working environment during the three and a half years plaintiff worked for Enterprise RI. Plaintiff neglects to provide corresponding dates for any of these actions and recalled during her deposition that most of them occurred prior to 1996. Plaintiff's termination is the only allegedly discriminatory act that occurred within the limitations period.

■ Enterprise RI concedes three incidents which may fall within the filing period. These include references to women as "hotties," a rumor that plaintiff and another co-worker were having an affair, and an incident where a customer kissed plaintiff. However, there is no evidence

that anyone ever directly referred to plaintiff as a "hottie," and the incident with a customer involved a person not employed by Enterprise RI. In addition, offensive utterances and offhand comments do not amount to discriminatory changes in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Isolated sexual advances, such as the incident with an Enterprise RI client, without more, do not constitute an abusive environment under Title VII. *Chamberlin v. 101 Realty*, 915 F.2d 777, 783 (1st Cir. 1990). These three incidents, standing alone or when viewed together, do not raise an issue of material fact regarding plaintiff's sexual harassment claim.

■ Plaintiff can also survive a motion for summary judgment if she presents facts which, if believed, will toll the limitations period. *Mack*, 871 F.2d at 182. The Supreme Court stated in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), that timely filing is not a jurisdictional prerequisite to a suit in federal court. It is a requirement, similar to the statute of limitations, that is subject to waiver, estoppel, and equitable tolling. *Id.* Plaintiff asks this Court to toll the limitations period based on the serial continuing violation theory.

■ The First Circuit has defined a serial continuing violation as a "number of discriminatory acts emanating from the same animus with each act constituting a separate wrong actionable under Title VII." *Sabree v. United Bhd. of Carpenters & Joiners Local 33*, 921 F.2d 396, 400 (1st Cir.1990). If a Title VII activity is continuing in nature, then the plaintiff's administrative charge is timely as to all discriminatory acts encompassed by the violation. *Provencher v. CVS Pharmacy*, 145 F.3d 5, 13 (1st Cir.1998); *Lawton*,

101 F.3d at 221; *Kassaye v. Bryant Coll.*, 999 F.2d 603, 606 (1st Cir.1993); *Sabree*, 921 F.2d at 400–02. In order for the continuing violation theory to apply, there must be some violation within the filing period that anchors the earlier claims. *Provencher*, 145 F.3d at 14. The plaintiff must prove a timely act that forms part of and exposes a pattern of actionable sexual harassment. *Id.* Mere residual effects of past discrimination will not satisfy the anchor requirement. *Id.* The court must focus on whether or not a present act of sexual harassment exists. *Kassaye*, 999 F.2d at 606; *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

Applying these standards in *Provencher*, the First Circuit affirmed the district court's ruling that a continuing violation did not exist. *Provencher*, 145 F.3d at 8. The Court held that in the absence of a connection between the timely and untimely acts, the alleged anchor violation cannot serve as a continuation of past discriminatory behavior. *Id.* at 15.

This Court recently addressed the continuing violation theory in *O'Rourke v. City of Providence*, 77 F.Supp.2d 258 (D.R.I.1999). This Court allowed testimony of otherwise untimely events to show a pattern of discrimination. *Id.* at 261. After hearing all the evidence, this Court concluded that there was no connection between the timely and otherwise untimely evidence and that the continuing violation theory did not apply. *Id.* at 261. This Court instructed the jury not to consider the time-barred testimony. *Id.* However, this instruction was not enough to overcome the large amount of time-barred and highly prejudicial evidence in the record. *Id.* Therefore, the defendant's motion for a new trial was granted. *Id.*

In reviewing this decision the Court of Appeals noted that by nature, "a hostile

work environment means that there are a series of events, which mount over time to create such a poisonous atmosphere as to violate the law." *O'Rourke v. City of Providence*, 235 F.3d 713, 727 (1st Cir. 2001). However, the First Circuit declined to adopt a per se rule that a hostile work environment claim also constitutes a continuing violation. *Id.* at 728 (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir.1995)).

 A majority of courts use the following criteria to evaluate the sufficiency of a continuing violation claim: first, is the subject matter of the discriminatory acts similar such that there is a substantial relationship between the timely and the otherwise untimely acts; second, are the acts isolated and discrete, or do they occur frequently, repeatedly, or continuously; third, are the acts of sufficient permanence that they should trigger the plaintiff's awareness of the need to assert her rights? *O'Rourke*, 235 F.3d at 731. Whether or not a continuing violation occurred is a question of fact for the jury, unless there are no material facts in dispute and judgment is warranted as a matter of law. *Id.* at 727. In applying these criteria in *O'Rourke*, the First Circuit found that a reasonable jury could have found the plaintiff a victim of a continuing violation. *Id.* at 728.

However, this case is distinguishable and summary judgment is appropriate. In *O'Rourke*, the timely and untimely acts were related in that they were acts of sexual harassment, although the untimely acts were by different actors in a different setting. In this case there can be no dispute that the subject matter of the timely and untimely acts are dissimilar. The only timely act to anchor plaintiff's claim is her termination on June 13, 1996. Unlike the situation in *O'Rourke*, this is an act of wrongful termination that is isolated,

discrete, and unrelated to the earlier alleged acts of sexual harassment. In the absence of a substantial relationship between the timely and the untimely actions, the continuing violation theory does not apply. *Desrosiers v. A & P*, 885 F.Supp. 308, 311 (D.Mass.1995). Therefore, as a matter of law, plaintiff cannot avail herself of the continuing violation theory.

The Court concludes that this case is analogous to the Eighth Circuit's recent decision in *Smith v. Ashland*, 250 F.3d 1167 (8th Cir.2001). There, the plaintiff offered her termination as the action within the filing period to anchor her sexual harassment claim under the continuing violation theory. *Id.* at 1173. The plaintiff did not allege any act pointing towards a hostile work environment during the limitations period. *Id.* The Eighth Circuit ruled that a court can only consider evidence preceding the limitations period if the plaintiff can also demonstrate evidence of a hostile work environment within the limitations period. *Id.* Since the untimely acts of alleged sexual harassment were not related to the timely action of plaintiff's termination, the Court concluded that evidence from the pre-limitations period was irrelevant. *Id.* The plaintiff's termination was an isolated event, which alone did not constitute a continuing violation. *Id.*

Similarly, plaintiff fails to show a current violation, an act of sexual harassment within the limitations period, to anchor her claim and allow her to rely on the otherwise untimely acts. The continuing violation theory does not apply and Enterprise RI's motion for summary judgment on Count III is granted.

*Count VII: The Retaliation Claim*

Enterprise RI moves for summary judgment on Count VII of the complaint, which

alleges retaliatory discharge.[5] It argues that plaintiff failed to exhaust her administrative remedies by not raising retaliation before the EEOC or RICHR. Enterprise RI also argues that plaintiff cannot prove the elements of a retaliation claim.

■ Enterprise RI argues that plaintiff's failure to check the box marked "retaliation" on her administrative complaints precludes her from raising the claim before this Court. Plaintiff argues that her retaliation claim naturally flows from her allegations of wrongful discharge and that administrative charges should be construed liberally to further the purposes of Title VII. *See Starks v. Coors Brewing Co.*, 954 F.Supp. 1463, 1469 (D.Colo.1997)(finding that plaintiff's EEOC charge included retaliation despite her failure to check the box marked "retaliation").

■ The First Circuit's recent decision in *Clockedile v. New Hampshire Dep't of Corrections* controls the resolution of this issue. In *Clockedile*, the trial court followed *Johnson v. General Electric*, 840 F.2d 132 (1st Cir.1988)and set aside a jury award for retaliatory discharge because the plaintiff did not allege retaliation at the administrative stage. *Clockedile v. N.H. Dep't of Corr.*, 245 F.3d 1 (1st Cir.2001). The Court of Appeals abandoned the *Johnson* rule and remanded the case with instructions to reinstate the jury's verdict. *Id.* at 7. Retaliation claims are preserved as long as the retaliation claim is reasonably related to and grows out of the dis-

crimination complained of to the administrative agency.[6] *Id.* at 6.

Plaintiff's retaliation claims are preserved under the *Clockedile* standard. As stated above, the Court must pay particular attention to the factual statement included with the administrative charge. *Stephenson*, 924 F.Supp. at 1276. Paragraphs 2–6 of plaintiff's administrative statement detail yearly promotions. In paragraph 7, plaintiff speaks of being asked to accept either one of two demotions or termination. Plaintiff's statement alleges that up until this time, her performance evaluations were at least satisfactory and that no one ever informed her otherwise. Plaintiff concludes with the statement, "I was terminated and treated differently because I am female." This chain of events alone shows a reasonable relation to the discrimination complained of elsewhere in the administrative charge.

In addition, plaintiff argues that by naming the date of her termination, June 13, 1996, as the last date of discriminatory action, she gave Enterprise RI and the administrative agencies notice that she was forced to resign because of circumstances that had nothing to do with her performance.

A similar argument was made in *Elbaz v. Congregation Beth Judea, Inc.*, 812 F.Supp. 802 (N.D.Ill.1992). The plaintiff's administrative charge identified the date of her termination as the date of the discriminatory action and noted her belief that such discrimination was predicated on im-

---

**5.** Plaintiff's complaint alleges two causes of action for retaliatory discharge, one pursuant to Title VII and the other pursuant to FEPA. The complaint numbers both causes of action as Count VII. For present purposes, the Court simply assumes that the latter is misnumbered, and should read Count VIII. That is the Title VII claim.

**6.** The First Circuit declined to take a position on the proper rule for non-retaliation claims or additional claims of discrimination that were never presented to the administrative agency. *Clockedile*, 245 F.3d at 6. Therefore, while the *Clockedile* decision is authoritative in resolving the motion for summary judgment on plaintiff's retaliation claim, it has no effect on the Court's decision to dismiss plaintiff's disparate impact claim.

permissible factors such as sex and national origin. *Id.* at 806. The District Court held that the plaintiff's claim of unexplained termination in the administrative charge was sufficient for her retaliation claim to withstand dismissal. *Id.* Likewise, this Court finds that plaintiff's sudden and unexplained termination is reasonably related to the claims of discrimination stated in her administrative complaint. Therefore, plaintiff has exhausted her administrative rememdies and her retaliation claim is properly before this Court.

In order to establish a prima facie case for retaliation, a plaintiff must show that she engaged in protected conduct, was discharged, and that there is a causal connection between her conduct and the resulting discharge. *Vizcarrondo v. Bd. of Trs.*, 139 F.Supp.2d 198, 204 (D.Puerto Rico 2001). An inference of retaliation arises when the plaintiff establishes an adverse action soon after the plaintiff engages in the protected activity. *Ruffino v. State St. Bank and Trust*, 908 F.Supp. 1019 (D.Mass.1995). Thus, where direct evidence of causation is missing temporal proximity may provide the necessary nexus to meet the third element of the plaintiff's case. *Id.* at 1046.

In addition, retaliation claims follow the *McDonnell Douglas* burden-shifting framework. *Id.* at 1044. This three-tiered analysis requires a plaintiff to demonstrate by a preponderance of the evidence that a rational fact finder could conclude that the adverse action was taken for retaliatory reasons. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

The Court finds that there are material issues of fact regarding causation. Plaintiff's affidavit states:

I believe that I was wrongfully discharged by the Enterprise defendants due to my sex and in retaliation for my having expressed concern and displeasure about inappropriate conduct of a sexual nature by a prominent client and the improper sexualized workplace environment in general. My job performance and abilities were never in question. Prior to my sudden termination in June 1996, I had recently received a favorable performance evaluation from Matthew Darrah, the man who fired me. I had achieved the highest customer satisfaction ratings and had consistently ranked number one or two in monthly sales for eleven months in a row.

Aff. of Lynne M. Russell, 11/7/00. Plaintiff has gone beyond her pleadings and produced several affidavits, which offer different reasons for plaintiff's being offered one of two demotions or termination. Darrah maintains that plaintiff lacked presence and initiative and failed to pursue the opening of a Bristol, Rhode Island office. There is an issue of fact as to whether or not opening the Bristol office was a company priority and was part of plaintiff's job as Area Rental Manager. This raises issues of fact on several levels of the *McDonnell Douglas* burden shifting analysis. If opening the Bristol office was part of plaintiff's job and she failed to do so, Enterprise RI may be able to establish a nondiscriminatory reason for its decision. On the other hand, plaintiff may argue that opening the Bristol office was never clearly established as a job requirement, making the proffered reason a pretext for discrimination.

There is also an issue of fact regarding the proximity of plaintiff's protected conduct and Enterprise RI's employment decision. Plaintiff alleges that she complained about an incident with an Enterprise RI client and offensive conduct by company employees that created a hostile working environment. If these com-

plaints were made at or around early June 1996, when plaintiff was offered three adverse employment options, she is entitled to a presumption that her protected acts of complaining about discriminatory treatment caused her subsequent discharge. *Ruffino*, 908 F.Supp. at 1044; *Wyatt v. City of Boston*, 35 F.3d 13, 16 (1st Cir.1994)(stating that causation can be established by showing the employer's knowledge of the protected activity was close in time to the adverse action).

Since the Court concludes that plaintiff has set forth sufficient evidence to establish a prima facie case for retaliation and there are material issues of fact, specifically on the element of causation, Enterprise RI's motion for summary judgment on the retaliation claim is denied.

*Counts IV–VII: Plaintiff's State Law Claims*

Pursuant to 28 U.S.C. § 1331, this Court may exercise supplemental jurisdiction over state law claims, which "form part of the same case or controversy" that is before the Court and over which the Court has proper jurisdiction. *Eastridge v. Rhode Island Coll.*, 996 F.Supp. 161, 168 (D.R.I.1998)(citing *Iacampo v. Hasbro*, 929 F.Supp. 562, 570 (D.R.I.1996)). In Counts IV–VII, plaintiff asserts claims for disparate treatment, disparate impact, sexual harassment, and retaliation under FEPA. Enterprise RI moves for summary judgment on these claims as well. Under FEPA, it shall be an unlawful employment practice for any employer "to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment because of race or color, religion, sex, handicap, age, sexual orientation, or country of ancestral origin." R.I. Gen. Laws § 28–5–7(1)(i)–(ii) (2001). FEPA is Rhode Island's

analog to Title VII and the Rhode Island Supreme Court has applied the analytical framework of federal Title VII cases to those brought under FEPA. *Tardie v. Rehab. Hosp. of R.I.*, 6 F.Supp.2d 125, 131 (D.R.I.1998), *a'ffd.*, 168 F.3d 538 (1st Cir. 1999); *Eastridge*, 996 F.Supp. at 169 (citing *Iacampo*, 929 F.Supp. at 574); *Marley v. United Parcel Svc.*, 665 F.Supp. 119, 128 (D.R.I.1987). Therefore, this Court grants Enterprise RI's motion for summary judgment on Counts V and VI (the disparate impact and sexual harassment state law claims) for the reasons previously expressed. In like manner, the motion for summary judgment on Count VII (the retaliation claim) is denied.

## IV. Conclusion

For the foregoing reasons, defendant Enterprise National is entitled to judgment on all counts of plaintiff's complaint. Defendant Enterprise RI's motion for summary judgment is granted as to Counts II, III, V, and VI. The motion for summary judgment is denied as to counts VII and VIII. Enterprise RI made no motion as to Counts I and IV.

After all this surgery, the patient is alive and well and may proceed to trial on Counts I and IV, her federal and state disparate treatment claims, and on Counts VII and VIII, her state and federal retaliation claims against Enterprise RI. No judgment shall enter until all claims are resolved.

It is so ordered.