Rosario Diaz DE CASTRO, Margarita De Castro, Plaintiffs, Appellants,

v.

SANIFILL, INC., John Doe, Inc., Richard Doe, ABC Waste, Inc., Defendants, Appellees.

No. 99–1504.

United States Court of Appeals, First Circuit.

Heard Nov. 2, 1999.

Decided Dec. 8, 1999.

Rehearing Denied Jan. 5, 2000.

Elisa Bobonis Lang for appellants.

Luis R. Perez–Giusti, with whom Leonard Mignucci & Perez Giusti was on brief for appellees.

Before LYNCH, Circuit Judge,
CAMPBELL, Senior Circuit Judge, and
O'TOOLE*, District Judge.

CAMPBELL, Senior Circuit Judge.

This appeal is from the district court's dismissal for lack of personal jurisdiction of plaintiffs De Castros' diversity action for personal injuries caused by a waste disposal truck in Puerto Rico. Plaintiffs have sued Sanifill, Inc. ("Sanifill"), a Delaware corporation with its principal place of business in Houston, Texas. On the basis of documentary evidence garnered in the course of limited discovery, the district court held that Sanifill lacked the minimum contacts necessary for Puerto Rico to exercise personal jurisdiction over it. The district court also dismissed the action insofar as it sought to proceed against "John Doe, Inc., Richard Doe and ABC Waste, Inc." We affirm.

## I.

In dismissing the complaint against Sanifill, the district court determined, in effect, that the activities of relevance to the truck-caused injury in Puerto Rico were largely attributable to Sanifill's wholly-owned Puerto Rican subsidiaries, primarily two Puerto Rican corporations named Sanifill of San Juan, Inc. ("Sanifill San Juan") and E.C. Waste of Puerto Rico, Inc. ("E.C. Waste"). Sanifill San Juan was organized

on August 21, 1995, and E.C. Waste on October 31, 1995. On August 25, 1995—prior to the formation of E.C. Waste—a municipal solid waste services agreement was executed between the Municipality of San Juan and a joint venture entitled El Coqui of San Juan ("El Coqui"), the latter described as being composed of the two said corporations. Signing for the joint venture were the general manager and officers of E.C. Waste and Sanifill San Juan.

The injury for which plaintiffs sued occurred on January 3, 1996. The truck alleged to have caused the accident was registered to Sanifill San Juan. It was used for hauling waste pursuant to the August 25, 1995, agreement between the Municipality of San Juan and the joint venture, El Coqui. Its driver is said to have been employed by the joint venture itself.

█ There is no evidence directly establishing that Sanifill, the parent corporation, owned or operated the truck or controlled the day-to-day activities of its subsidiaries or of the joint venture. Clearly, Sanifill's mere ownership of the two local corporate entities that participated in the El Coqui joint venture would not establish a measure of control over them sufficient for us to reject their own corporate identity; nor would the fact that the officers and directors of the two local corporations were also officers and directors of the parent. *See United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1091 (1st Cir.1992), *rev'd on other grounds*, 987 F.2d 39 (1st Cir.1993); *Miller v. Honda Motor Co., Ltd.*, 779 F.2d 769, 772 (1st Cir.1985); *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir. 1980).

█ This court has said, citing a pronouncement of the Supreme Court of Puerto Rico, that to establish jurisdiction over the parent, a party must produce "strong and robust" evidence of control by

---

* Of the District of Massachusetts, sitting by   designation.

the parent company over the subsidiary, rendering the latter a "mere shell." *Escude Cruz,* 619 F.2d at 905, *citing San Miguel Fertilizer v. P.R. Drydock & Marine Terminals,* 94 P.R.R. 403, 409 (1967). In the present case, while there was no direct evidence of parental involvement, as such, in the day-to-day activities of the two subsidiaries or in their joint venture, the plaintiffs point to convincing evidence that the subsidiaries lacked assets and were not themselves active following execution of the waste haulage agreement on behalf of the joint venture. Apart from certificates attesting to the organization of the two subsidiary corporations on the above dates, there is little else to suggest their viability. Annual reports for 1995 and 1996 that were filed after the accident with Puerto Rican authorities on behalf of each company list the names of directors but state expressly that both corporations had zero assets in 1995 and 1996. Letters from Coopers & Lybrand, directed to the subsidiaries' respective boards of directors, state that the accountants had conducted no audit of either company's books because each company "was inactive and had no assets within Puerto Rico in the year 1996." From this it can be surmised that neither subsidiary maintained books or records indicating the value of its interest in the joint venture, nor had active bank accounts or employees on its payroll. The parent, Sanifill, presumably received the proceeds from its Puerto Rican ventures in some manner, but not through the ostensible venturers, Sanifill San Juan and E.C. Waste.

It thus appears that, besides executing the waste haulage agreement with the municipality of San Juan in August of 1995 on behalf of the El Coqui joint venture, and registering the truck in question in the name of Sanifill San Juan, neither subsidiary was active. This assumption is consistent not only with the companies' annual reports and their accountants' statements, but with an unsworn declaration filed on behalf of defendants by Pablo De Jesus Ramos, who stated therein that he was the operations manager of El Coqui, the joint venture. In the declaration, De Jesus Ramos indicated that the decisional and operational activities of the joint venture under the contract with the Municipality of San Juan were conducted directly by El Coqui itself. We note also the existence of another corporate subsidiary of Sanifill entitled El Coqui Waste Disposal, Inc., which conceivably assisted in the operations of the joint venture, although its actual role is not explained anywhere in the record.

■ The question arises on these facts whether the two subsidiaries in question were so shell-like by virtue of their inactivity as to forfeit recognition as corporations separate from their parent, whose interests they serve. In determining whether to disregard the corporate form, courts normally conduct a highly fact-specific inquiry, including, inter alia, consideration of the extent to which a subsidiary may have disregarded corporate formalities; the degree of control exercised by the parent over the day-to-day operations of the subsidiary; overlap in ownership, officers, directors, and personnel; and whether the subsidiary was adequately capitalized. *See Miller v. Honda Motor Co.,* 779 F.2d 769, 772 (1st Cir.1985) (applying Massachusetts law); *Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 593–94 (5th Cir.1999) (applying Texas law); *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir.1991) (applying New York law). *See also* William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 43.70 (1999 ed.).

In some cases, undercapitalization has been held to indicate that the company is merely a "conduit or business tool." *Gardemal,* 186 F.3d at 593–94. *See also Birbara v. Locke,* 99 F.3d 1233, 1241 (1st Cir.1996); *163 Pleasant Street Corp.,* 960 F.2d at 1093. The adequacy of capital, however, is determined within the context of the relevant corporate purposes and activities, *see NLRB v. Greater Kansas City Roofing,* 2 F.3d 1047, 1053 & n. 8

(10th Cir.1993), and one can argue here that no capital was shown to have been needed for Sanifill San Juan and E.C. Waste to enter into the joint venture. Undercapitalization has been called a particularly critical factor in tort cases, where equitable concern about a company's inability to pay a judgment to a prevailing plaintiff comes into play. *See Gardemal,* 186 F.3d at 594; Fletcher, *supra* at § 41.45. Still, the mere lack of funding has been held insufficient to pierce the corporate veil, and courts are reluctant to infer injustice unless the particular facts so suggest. *See Greater Kansas City Roofing,* 2 F.3d at 1053 & n. 8, and cases cited.

Here, the apparent purpose of the subsidiaries was to set up the El Coqui joint venture and empower it (rather than themselves) to carry out the functions described in the affidavit of De Jesus Ramos: i.e., quality control; execution of contracts; supervision, hiring and firing of personnel; and accounting and invoicing. When viewed "in light of the nature and magnitude of the corporate undertaking," the lack of capital does not necessarily indicate that each subsidiary is merely a "conduit or business tool" of Sanifill. *See id.* at 1053 n. 8.[1] As we have said, there is no direct evidence of Sanifill's control of day-to-day operations. And while inferring such control from the inactivity of the subsidiaries might be appropriate under some circumstances, here there is evidence that the decision-making and day-to-day operational functions were carried out by the El Coqui joint venture itself rather than Sanifill. Furthermore, while there is substantial overlap among the officers and directors of Sanifill and the subsidiaries, formal corporate separateness was observed at the most basic level. In sum, although this is a close case, we are inclined to believe that these facts fall short of the "strong and robust" evidence required to pierce the corporate veil under Puerto Rico law.

## II.

■ The district court also dismissed plaintiffs' claims against several unnamed defendants for failure to prosecute, stating that those defendants had not been identified or summoned. Plaintiffs contend that this was error, as discovery thus far had been limited to the issue of personal jurisdiction and they had not yet had the opportunity to identify the unnamed defendants.

■ We review a district court's dismissal for failure to prosecute for abuse of discretion. *Benjamin v. Aroostook Medical Center, Inc.,* 57 F.3d 101, 107 (1st Cir.1995). In their complaint, plaintiffs described "John Doe, Inc." and "Richard Doe" as being "in charge of the business operation that used and controlled the vehicle that caused the accident, the owners of such vehicle, or the persons responsible for its use, operation and maintenance." Moreover, they stated that "ABC Waste Inc." is an unnamed corporation "who acquire or merge with Sanifill" [sic]. The purported roles of these unnamed defendants are very closely linked with the issues of corporate identity that were the subject of the jurisdictional discovery that the district court allowed. We think that the allowed discovery afforded plaintiffs sufficient opportunity to pursue these defendants' identities. Accordingly, the district court did not abuse its discretion in dismissing the complaint against the unnamed defendants.

*Affirmed.* Costs to appellees.

---

**1.** Rosario Diaz de Castro made an extrajudicial claim directly against El Coqui, and entered a settlement therewith. El Coqui was the beneficiary, along with the parent, Sanifill, of various insurance policies.