Douglas SNELL, Plaintiff,

v.

BOB FISHER ENTERPRISES, INC.,
BFE, Inc., and Bob Fisher, d/b/a Bob
Fisher Enterprises, Defendants.

No. Civ. 99–150–P–C.

United States District Court,
D. Maine.

July 31, 2000.

Christopher C. Dinan, Noah D. Wuesthoff, Monaghan, Leahy, Hochadel & Libby, Portland, ME, William D. Robitzek, Berman & Simmons, P.A., Lewiston, ME, for Douglas Snell, plaintiff.

Martin I. Eisenstein, Daniel Nuzzi, Brann & Isaacson, Lewiston, ME, for B F E Inc, defendant.

James C Hunt, Robinson, Kriger, McCallum & Greene, P.A., Portland, ME, for Lay–Mor, defendant.

Martin I. Eisenstein, Daniel Nuzzi, Brann & Isaacson, Lewiston, ME, Harrison L. Richardson, Paul R. Johnson, Richardson, Whitman, Large & Badger, Portland, ME, Bob Fisher, defendant.

## MEMORANDUM OF DECISION AND ORDER

CARTER, District Judge.

Presently before the Court is a Motion to Dismiss or in the Alternative for Summary Judgment ("Motion to Dismiss") (Docket No. 4) by Defendant BFE, Inc. This products liability action arises out of injuries Plaintiff suffered while operating a street-sweeping device. This action was originally brought in the Maine Superior Court. Bob Fisher Enterprises, Inc., never filed an appearance, and Plaintiff obtained a default judgment against Bob Fisher Enterprises, Inc. Subsequently, Lay Mor, Inc., a former Defendant, removed this action to this Court, citing diversity jurisdiction. Eventually, Plaintiff and Lay Mor, Inc., moved to dismiss Lay Mor, Inc. from this suit (Docket No. 28). BFE, Inc., did not object to the dismissal of Lay Mor, Inc. Accordingly, the Court granted the motion. Subsequently, the Court granted Plaintiff's Motion to Amend the Complaint to Add Bob Fisher as a Defendant (Docket No. 33). As a result of the default of Bob Fisher Enterprises, Inc., the dismissal of Lay Mor, Inc., and the addition of Bob Fisher as a Defendant by Plaintiff's Amended Complaint, currently, BFE, Inc. and Bob Fisher are the only active Defendants in this case.

In its Motion to Dismiss, Defendant BFE, Inc. contends that this Court lacks personal jurisdiction over BFE, Inc. because BFE, Inc. does not currently have, nor has it had in the past, any contacts with the State of Maine. After the briefing on this Motion to Dismiss was completed, but before discovery was finished, this Court reserved decision on the Motion to Dismiss until discovery was completed, and afforded the parties the opportunity to submit supplemental briefing thereafter. Discovery having been completed, and the parties having submitted their supplemental briefs, this Motion to Dismiss is now properly before the Court for resolution.

The Amended Complaint (Docket No. 43) alleges the following facts. On May 11, 1997, the Plaintiff, a resident of Maine, leased a street sweeper. Amended Complaint ¶¶ 1, 7. On that day, Plaintiff was

injured while using the street sweeper. *Id.* ¶ 13.

The following additional facts are undisputed. The street sweeper in question was sold by Bob Fisher Enterprises to Rent It, Inc. of Auburn, Maine in or about March 1989. Defendant BFE, Inc.'s Statement of Undisputed Material Facts ("DSMF") (Docket No. 5) ¶ 5. Bob Fisher Enterprises was operated as a sole proprietorship by Bob Fisher until it was incorporated as Bob Fisher Enterprises, Inc. on June 30, 1989. Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Plaintiff's Statement of Disputed and Undisputed Material Facts ("PSMF") (Docket No. 32) ¶ 1. In September 1994, the assets of Bob Fisher Enterprises, Inc., including the street sweeper line, were sold to Waldon, Inc. PSMF ¶ 37. BFE, Inc. was incorporated in December 1994. DSMF ¶ 7. BFE, Inc. is engaged primarily in the business of buying and selling new and used construction equipment—primarily small used asphalt paving equipment. DSMF ¶ 9.[1] BFE, Inc. has no employees, agents, distributors, or customers in Maine, nor has it marketed any products in Maine. DSMF ¶¶ 10, 11, 13.

■■■ When faced with a motion to dismiss for lack of jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Scott v. Robert Trent Jones II*, 984 F.Supp. 37, 42 (D.Me.1997) (citing *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir.1992)). Deciding a motion to dismiss for lack of jurisdiction is, necessarily, a "fact-sensitive inquiry." *Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir.1995). In order to avoid dismissal, the plaintiff, relying on the pleadings, affidavits, and exhibits, must make a *prima facie* showing of "evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit*, 967 F.2d at 675. "The record must contain specific allegations of jurisdictional facts, which the Court will construe in Plaintiff's favor." *Scott*, 984 F.Supp. at 42 (citing *Archibald v. Archibald*, 826 F.Supp. 26, 28 (D.Me.1993)).

■■■ The Court's exercise of personal jurisdiction over a nonresident defendant is determined by a two-step examination. First, the Court must determine if the forum state's long-arm statute allows for the exercise of jurisdiction. Second, the Court must decide whether the exercise of jurisdiction under the forum state's long-arm statute comports with the principles of due process embodied in the United States Constitution. *See Sawtelle v. Farrell*, 70 F.3d at 1388. Maine's long-arm statute, 14 M.R.S.A. 704–A, is "coextensive" with the Due Process Clause of the Fourteenth Amendment. *Murphy v. Keenan*, 667 A.2d 591, 593 (Me.1995). Accordingly, the jurisdictional analysis in this case will be within the framework of federal due process. *Sawtelle*, 70 F.3d at 1388.

■■■ Constitutional due process demands that the forum state's exercise of personal jurisdiction over a nonresident defendant be predicated upon "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International*

---

1. In PSMF, Plaintiff routinely responds to factual statements in DSMF with the following language:

> The facts stated in DSMF ¶ 4 are immaterial to the motion. As argued in Plaintiff's Objection to Defendant's Motion, while BFE, Inc. may not have been an operating entity at the time the sweeper was designed, manufactured, marketed, distributed, and sold, these activities are attributable to BFE, Inc. for jurisdictional and liability purposes by piercing the corporate veil.

PSMF at 2. This response does not comply with Local Rule 56(c) in that it does not "admit, deny or qualify" the statement of the opposing party. Instead, Plaintiff's responses to various of BFE, Inc.'s factual statements amount to legal argument. Accordingly, whenever Plaintiff has employed this language in response to a factual assertion by Defendant BFE, Inc., the Court takes the assertion to be admitted by Plaintiff.

*Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The "minimum contacts" described in *International Shoe* vary depending on whether the forum state seeks to exercise general or specific jurisdiction. *Scott*, 984 F.Supp. at 42–43 (citing *Archibald*, 826 F.Supp. at 29).

■ Plaintiff does not argue that BFE, Inc. had sufficient "minimum contacts" with Maine such that general or specific jurisdiction is proper. Rather, Plaintiff seeks to establish jurisdiction over BFE, Inc. by piercing the corporate veil and attributing to BFE, Inc. the "minimum contacts" that Bob Fisher Enterprises and Bob Fisher Enterprises, Inc. had with Maine. Piercing the corporate veil has been recognized, in some circumstances, as a viable means to establish jurisdiction. *De Castro v. Sanifill, Inc.*, 198 F.3d 282, 283 (1st Cir.1999). In deciding whether to pierce the corporate veil in order to establish jurisdiction, the Court will apply the law of the forum state. *See id.* (applying Puerto Rico law where Puerto Rico was the forum state and the defendant over which jurisdiction was sought was a Delaware corporation with its principal place of business in Texas). Accordingly, the Court will apply Maine law to determine if Plaintiff has made a *prima facie* showing that the corporate veil of BFE, Inc. should be pierced, such that any contacts Bob Fisher Enterprises and Bob Fisher Enterprises, Inc. had with Maine shall be attributable to BFE, Inc. for the purpose of determining if jurisdiction over BFE, Inc. is proper.

■ Under Maine law, public policy dictates that "corporations are separate legal entities with limited liability." *Theberge v. Darbro Inc.*, 684 A.2d 1298, 1301 (Me.1996). Given this legal status, it is established that courts should ignore the corporate form only "cautiously," and "only when necessary to promote justice." *Anderson v. Kennebec River Pulp & Pa-*

*per Co.*, 433 A.2d 752, 756 n. 5 (Me.1981). The Maine Law Court has established a two-part test that must be satisfied "before a court may pierce the corporate veil." *Johnson v. Exclusive Properties Unlimited*, 1998 ME 244, ¶ 6, 720 A.2d 568, 571. In particular, "a plaintiff must establish that: (1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Id.* This two-part analysis requires a balancing of "the policy of encouraging business development with the policy of protecting those who deal with the corporation." *Id.*

The Maine Law Court has provided further guidance with respect to the first part of the "piercing" analysis.

To determine whether a shareholder has abused the privilege of a separate corporate identity under the first prong of the piercing doctrine, courts examine a variety of factors. For example, Massachusetts courts weigh the following twelve factors: (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity, assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promotion fraud.

*Id.* ¶ 7, 720 A.2d at 571 (quoting *The George Hyman Constr. Co. v. Gateman*, 16 F.Supp.2d 129, 149–50 (D.Mass.1998)). Despite the absence in *Johnson* of unequivocal language adopting these twelve factors, both parties have relied on this list as a statement of Maine law with regard to piercing the corporate veil. For the purposes of this decision, the Court accepts the parties interpretation of *Johnson*.

Plaintiff contends that the first part of the piercing analysis is satisfied in this case because three of the twelve factors set forth in *Johnson* are present. In particular, Plaintiff points out that Bob Fisher was the common owner of Bob Fisher Enterprises, Bob Fisher Enterprises, Inc., and BFE, Inc., thus satisfying the first factor set forth in Johnson. It is undisputed that Bob Fisher owns or owned at least part of these three business entities. However, the Court does not read *Johnson* to hold that simply by showing common ownership, a plaintiff is entitled to pierce the corporate veil. Certainly *Johnson* indicates that common ownership is one factor that may be considered in deciding the first part of the piercing test, but common ownership, unlike some of the other factors set forth in *Johnson*, cannot be the only basis upon which the first prong of the piercing test may be satisfied. Accordingly, the Court will consider the fact that Bob Fisher owned all three of these business entities, but Plaintiff must show more before the first prong is satisfied.

Next, Plaintiff contends that there is "evidence of intermingling of the assets, business activity, and management of the three entities." Plaintiff's Objection to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Docket No. 31) at 13. In support of this contention, Plaintiff notes that "[a] number of checks were written by BFE, Inc. to Bob [Fisher Enterprises], Inc. on a regular basis or a prolonged period." *Id.* Plaintiff admits, however, that he does not know for what purpose these checks were written.[2] The existence of checks from BFE, Inc. to Bob Fisher Enterprises, Inc., alone, does not demonstrate a "confused intermingling of business activity, assets, or management." *Johnson* 1998 ME 244 ¶ 7, 720 A.2d at 571. The Court can envision innumerable legitimate purposes for which BFE, Inc. could be writing checks to Bob Fisher Enterprises, Inc. Indeed, such checks tend to undermine, rather than bolster, Plaintiff's position. The use of checks to transfer funds between these two corporations suggests a proper separation of their particular corporate activities—rather than, for example, the shared use of a single bank account by two corporations. Furthermore, if BFE, Inc. was transferring funds by check "on a regular basis over a prolonged period" to Bob Fisher Enterprises, Inc., that tends to undermine Plaintiff's broader theory that Bob Fisher was somehow trying to shelter personal assets, as well as the assets of Bob Fisher Enterprises, Inc. in BFE, Inc.

Plaintiff next contends that there is evidence of thin capitalization or insolvency. In support of this proposition, Plaintiff proffers three facts. First, Mr. Fisher testified that he started Bob Fisher Enterprises with his personal savings, as opposed to a bank loan. Second, the default of Bob Fisher Enterprises, Inc. in this case suggests that it is insolvent. Third, Mr. Fisher indicated that BFE, Inc. does not maintain insurance. The first two facts cited by Plaintiff are entirely irrelevant to the question of whether or not the Court should disregard the corporate form of BFE, Inc. The means by which Bob Fisher initially financed Bob Fisher Enterprises, which began as a sole proprietorship, is of no moment. Similarly, speculation as to why Bob Fisher Enterprises, Inc. defaulted in this matter is immaterial to this Court's analysis of whether to pierce the corporate form of BFE, Inc. As to Plaintiff's allegation that BFE, Inc. apparently does not carry insurance, in response to an interrogatory, BFE, Inc. merely indicated that "it has no insurance policies which were or may have been in effect and provided for the above-cap-

---

**2.** When Plaintiff filed his initial objection to the Motion to Dismiss, the deposition of Mr. Fisher was not complete, such that Plaintiff was unable to determine why the checks were written. However, following the completion of the deposition, Plaintiff was afforded an opportunity to file supplemental briefing. Nowhere in the supplemental briefing does Plaintiff refer to these checks.

tioned incident for both BFE, Inc. and Bob Fisher Enterprises, Inc." Answers to Interrogatories No. 11. Simply put, that is insufficient evidence to demonstrate either that BFE, Inc. was thinly capitalized or that it is now insolvent.

In support of piercing the corporate veil, Plaintiff has demonstrated only some level of common ownership of Bob Fisher Enterprises, Bob Fisher Enterprises, Inc., and BFE, Inc. Common ownership alone is insufficient to satisfy the first prong of the piercing test. Accordingly, Plaintiff has failed to make a *prima facie* showing that satisfies the first part of the test for piercing the corporate veil under Maine law.

 Even if the Court were satisfied that Plaintiff had made a *prima facie* showing that satisfied the first part of the piercing test under Maine law, the Court is not satisfied that "an unjust or inequitable result would occur if the court recognized the separate corporate existence" of BFE, Inc. *Johnson,* 1998 ME 244 ¶ 6, 720 A.2d at 571. The second part of the Maine piercing test essentially requires the Court to balance the equities and determine if justice requires piercing. Plaintiff has not demonstrated why justice requires the Court to pierce the corporate veil and attribute to BFE, Inc., the contacts of Bob Fisher Enterprises and Bob Fisher Enterprises, Inc. with the forum state. Indeed, Plaintiff has failed to provide any specific argument as to why this second element of the piercing test has been satisfied. Plaintiff has already obtained a default judgment against Bob Fisher Enterprises, Inc. Furthermore, by Plaintiff's Amended Complaint, Bob Fisher in his individual capacity has been added as a Defendant, and from the facts now before the Court, it does not appear that Bob Fisher would be able to avoid personal liability by attempting to hide behind the corporate entity BFE, Inc.—especially because BFE, Inc. was incorporated years after the street

sweeper was manufactured and sold.[3] Accordingly, the Court finds that "an unjust or inequitable result" would *not* occur "if the court recognized the separate corporate existence" of BFE, Inc. Because it is undisputed that BFE, Inc. has had no contacts with the State of Maine, Plaintiff has failed to meet his burden of establishing jurisdiction over Defendant BFE, Inc. Therefore, the Motion to Dismiss of Defendant BFE, Inc. will be granted by the Court.

Accordingly, the Court **ORDERS** that the Motion to Dismiss of Defendant BFE, Inc., be, and it is hereby, **GRANTED.** It is further **ORDERED** that Defendant BFE, Inc. is **DISMISSED** from this action.

---

3. In his briefing, Plaintiff admits that he is not seeking to establish that BFE, Inc. is liable for the actions of Bob Fisher Enterprises or Bob Fisher Enterprises, Inc. under a theory of successor liability.