STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-85

ZEMCO INDUSTRIES, INC.,

Plaintiff

v.

**DECISION AND ORDER**

FCW TECHNOLOGIES, INC.,
*et al.,*

Defendant

FEB 3 2004

This matter is before the court on motion for summary judgment by defendant Michael D. McLucas on crossclaim of defendant, FCW Technologies, Inc. The underlying complaint alleges that FCW Technologies, Inc. contracted with plaintiff Zemco Industries, Inc., d/b/a Jordan's Meats, Jos. Kirschner Co., for the installation of an "FCW Rosin Laminate Floor System" in designated areas of the meat processing facility of the plaintiff in Augusta, Maine. The contract required that the area to receive the new flooring was to be clear of food and equipment, maintained at a specified temperature, maintained in a dry condition and that the specifications be completed 48 hours before the floor installation. Defendant FCW Technologies, Inc. subcontracted the floor installation to numerous defendants including MORMIC, Inc., a Pennsylvania corporation. It is alleged that a large amount of meat products, plaintiff's finished product for sale, was ruined and subsequently necessarily destroyed because of the floor installation process. MORMIC, Inc.'s shareholder and employee is defendant Michael D. McLucas. Defendant McLucas has received summary judgment on the complaint by this court on July 8, 2003, but remained as a crossclaim defendant.

Defendant FCW Technologies, Inc. has brought a crossclaim against defendant MORMIC, Inc. and Michael McLucas seeking contribution and indemnification from MORMIC, Inc. and contribution and indemnification from McLucas. In its crossclaim, FCW avers the subcontract it entered with MORMIC, Inc. "whereby MORMIC agreed to provide labor for the performance of the Phase II work." It also alleges that FCW entered into a contract agreement with MORMIC "whereby MORMIC agreed to provide labor for the performance of the Phase III work." Crossclaim, ¶¶ 6, 9. FCW further alleges that defendant McLucas performed certain portions of the Phase II and III work. The crossclaim goes on to assert that by written contract, MORMIC expressly agreed to indemnify FCW for all loss arising out of any breach of warranty or negligence by MORMIC, Inc. of the performance of Phase II and Phase III work. With regards to the allegations arising out of the complaint of contamination of meat products during the performance of Phase III, FCW alleges in its crossclaim that MORMIC and McLucas had a duty to perform the work on the project in a good workmanlike manner.

In support of his motion for summary judgment, defendant Michael D. McLucas provides an affidavit noting the subcontract agreements entered into between FCW and MORMIC on December 6, 2000, and in September of 2000 to perform labor for the installation of the floor. It was apparently further agreed that neither MORMIC, Inc. nor McLucas ever had any contract directly with the plaintiff Zemco or Kirschner. Finally in his affidavit, McLucas makes it clear that all of his work in this project was as an employee of MORMIC, Inc., during Phase II, September 23-25, 2000, and Phase III, March 16-18, 2001.

Crossclaim defendant argues that before the court may pierce the corporate veil, a plaintiff must establish that (1) the defendant abused the privilege of a separate

corporate entity, and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence. *Johnson v. Exclusive Props. Unlimited*, 720 A.2d 568, 1998 ME 244; *Snell v. Bob Fisher Enterprises, Inc.*, 106 F.Supp. 2d 87 (D.C. Me. 2000). The court may pierce the corporate veil when equity so demands and may disregard the corporate entity when used to cover fraud, illegality, or to justify a wrong. *Id. See also GMAC Commercial Mortgage Corp. v. Gleichman*, 84 F.Supp. 2d 127 (D.C. Me. 1999). Unless fraud or misrepresentation is involved, there can be little justification for disregarding corporate entities which parties obviously expected to remain in tact. *United Paperworkers Intern v. Union Pennttech Papers, Inc.*, 439 F.Supp. 610 (D.C. Me. 1977).

There is no disagreement of fact that the subcontract entered into by FCW which is the basis for the crossclaim was with MORMIC, Inc. alone and defendant McLucas is not a party to the contract. There is no evidence under the law as recited to justify piercing the corporate veil in order to impose personal liability upon defendant McLucas as an incorporator or shareholder. There does not appear to be express or implied contractual relationships between FCW Technologies and McLucas personally.

Crossclaimant's opposition to the motion for summary judgment does not dispute the facts and it agrees that the work performed by McLucas was done in the capacity of a MORMIC, Inc. employee. However, crossclaimant points out that plaintiff's complaint alleges negligent performance of that work by the defendant and argues that its crossclaims arise out of that negligent performance complaint. Going further, "FCW agrees that Mr. McLucas is not liable to FCW on a contract theory of liability, but that Mr. McLucas is liable to FCW on a tort theory of liability, based on his own negligent acts in carrying his work on the project. To the extent that Mr. McLucas performed his work on this project negligently, and his negligence was a proximate

cause of the damages sustained by plaintiff, FCW may properly assert contribution and indemnity actions against Mr. McLucas." Defendant FCW Technologies, Inc. Opposition to Motion for Summary Judgment by Defendant Michael McLucas, p. 2. FCW recites RESTATEMENT, SECOND. OF AGENCY, § 343, for the proposition that: "An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal . . . " FCW then goes on to argue a hypothetical situation comparing the negligence of defendant McLucas were he to be engaged in a traffic accident while arriving at a job site working for his corporation.

Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

The obvious question is whether defendant McLucas can be held jointly liable for contribution or indemnification purposes with FCW if it is found liable in the

underlying action even though this court has found no contractual relationship between FCW and McLucas. Logic dictates that if Michael D. McLucas cannot be held liable as an incorporator, shareholder or officer without piercing the corporate veil, calling him an employee (which indeed all officers of corporations are) should not make him liable without his meeting the two-prong test outlined in *Johnson v. Exclusive Props. Unlimited*, 720 A.2d 568. More importantly, without a contractual obligation, which FCW has dismissed, where does there arise a duty of McLucas to FCW under the law of negligence? The law creates a duty for a person to conduct himself free of negligence when it operates a motor vehicle on a highway, when it maintain premises, when it places a product in commerce, etc. FCW's contract is with MORMIC and the only relationship between those parties arises out of that contract. In the absence of a contract between FCW and McLucas, what was the relationship between those parties that created a duty, a duty to be free from negligence? Certainly MORMIC has a duty to FCW to perform under the contract in a workmanlike manner and to refrain from causing injury to FCW from its performance on the premises of Zemco arising out of negligence. However, since there is no relationship existing under any circumstances under the agreed facts in this case between defendant and crossclaimant FCW Technologies and defendant McLucas, there can be no claim for indemnification for contribution founded upon negligence.

For the reasons so cited, the entry will be:

> Defendant Michael D. McLucas's motion for summary judgment on the crossclaim of FCW Technologies, Inc. is GRANTED; judgment for defendant McLucas on FCW Technologies, Inc.'s crossclaim is GRANTED.

Dated: January 26, 2004

Donald H. Marden
Justice, Superior Court

ZEMCO INDUSTRIES, INC. - PLAINTIFF

Attorney for: ZEMCO INDUSTRIES, INC.
STEPHEN E F LANGSDORF
PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

vs
FCW TECHNOLOGIES, INC. - DEFENDANT
660 FURNACE HILLS PIKE
LITITZ PA
Attorney for: FCW TECHNOLOGIES, INC.
WENDELL LARGE
RICHARDSON WHITMAN LARGE & BADGER
465 CONGRESS ST, SUITE 900
PO BOX 9545
PORTLAND ME 04112-9545

MORMIC, INC. - DEFENDANT
31 KNOLLWOOD DRIVE
AKRON PA
Attorney for: MORMIC, INC.
JEFFREY TOWNE
179 MAIN STREET STE 202
WATERVILLE ME 04901

FRO BOND EPOXY FLOORING, INC.-VOID - DEFENDANT
31 KNOLLWOOD DRIVE
AKRON PA
MICHAEL MCLUCAS - DEFENDANT
31 KNOLLWOOD DRIVE
AKRON PA 17501
Attorney for: MICHAEL MCLUCAS
JEFFREY TOWNE
179 MAIN STREET STE 202
WATERVILLE ME 04901

JEFFREY KNIPPINBERG-VOID SR - DEFENDANT
31 KNOLLWOOD DRIVE
31 KNOLLWOOD DRIVE PA 17501
GULF COAST POLYMER SERVICES - THIRD PARTY DEFENDANT

Attorney for: GULF COAST POLYMER SERVICES
PAUL R JOHNSON
RICHARDSON WHITMAN LARGE & BADGER
465 CONGRESS ST, SUITE 900
PO BOX 9545
PORTLAND ME 04112-9545

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CV-2002-00085

DOCKET RECORD

Filing Document: COMPLAINT                    Minor Case Type: PRODUCT LIABILITY
Filing Date: 04/24/2002

STATE OF MAINE                                    SUPERIOR COURT
                                                  CIVIL ACTION
KENNEBEC, ss.                                     DOCKET NO. CV-02-85

ZEMCO INDUSTRIES, INC.,

        Plaintiff

        v.                                        **DECISION AND ORDER**

FCW TECHNOLOGIES, INC., *et al.*,

        Defendants


This matter is before the court on defendants' motion for partial summary judgment pursuant to M.R. Civ. P. 56.

The present complaint arises out of a construction project in which Defendant FCW Technologies, Inc. ("Defendant" or "FCW") and its subcontractors, Defendant Mormic, Inc. ("Mormic") and Third Party Defendant Gulf Coast Polymer Services, Inc. ("Gulf Coast"), installed a floor at a meatpacking plant owned by Plaintiff Zemco Industries, Inc., d/b/a/ Jordan's Meats, Jos. Kirschner Co. ("Plaintiff" or "Kirschner"). The floor that was installed by FCW and its subcontractors at Kirschner's plant is a "layered resin floor". This type of floor is created by mixing two liquids together to form a resin, which is then applied to the existing concrete floor. A chemical reaction occurs, causing the two liquids to bond together and form a solid coating. Floors similar to these are commonly used throughout the food preparation industry.

Kirschner did not want the installation process to interfere with the operation of its meat production line, so the parties agreed to have the work take place on weekends. Based on the volume of work to be accomplished, the parties split the job up into three "phases", each approximating the amount of floor that could be installed in one weekend. Phase I of the contract was performed in January of 2000 and Phase II of the

contract was performed in September of 2000. As it turned out, Phase III involved more work than could be accomplished in one weekend, so it was split into two sub-phases, III-A and III-B. The work on Phase III-A was performed in February of 2001 and the work on Phase III-B was performed in March of 2001. FCW subcontracted the labor for Phase I to Gulf Coast and subcontracted the labor for all other phases to Mormic.

Prior to the start of work for each phase of the project, FCW supplied Kirschner with a form entitled "Customer Preparation for Installation." Among the instructions contained in this form is a statement in bold lettering that "[f]ood products must be removed from all coolers and the immediate area where the floor is to be installed. No food products will be allowed to remain in the immediate area where floor is being installed". When FCW and Mormic arrived at the plant to begin work on Phase II, however, certain food products had not been removed from the cooler adjacent to the work area. Kirschner understood that FCW recommended removal of food products from areas adjacent to the work, but could not do so because it had nowhere else to put the food. Thus, Gary Melbon, Kirschner's maintenance manager, signed a handwritten statement reiterating the company's awareness of FCW's recommendation, and also stating that Kirschner "understands that FCW is not liable for odor entering coolers and damaging food product". The parties did not execute a similar document prior to or during work on any other phase of the project. The work for Phase II was apparently completed without damage to any of Kirschner's food products.

Immediately following the completion of work on Phase III-B, however, it was discovered that 38,000 pounds of Kirschner's prepared meat products had been contaminated. Also, by the fall of 2002, failure of the floor had occurred in all phases of the project.

In December of 2002, the Court accepted the filing of Plaintiff's amended complaint[1], which seeks recovery related to the meat contamination, including disposal costs, lost profits, and clean up, as well as the costs associated with the removal, repair, and replacement of the floor.

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

---

[1] The amended complaint is in sixteen counts and asserts claims sounding in negligence, breach of contract, breach of express and implied warranties, and strict products liability.

## 1.   Implied Warranty Claims

The first argument presented by the Defendant centers on counts III, V, VI, and VII of the amended complaint, which allege breaches of implied warranties arising under the Uniform Commercial Code ("UCC") as adopted in Maine[2]. FCW believes that these claims must fail because the floor installation was not predominantly the sale of movable goods, and is therefore not subject to the UCC's provisions. In support of its position, the Defendant cites to the case of *Smith v. Urethane Installations, Inc.*, 492 A.2d 1266 (Me. 1985), in which a homeowner sued a contractor who installed faulty insulation in his home. In that case, the transaction in question involved both the sale of goods (the insulation itself) and services (the insulation of the home). In determining that the predominant feature of the contract was the provision of a service, the Law Court explained as follows:

> Our conclusion is supported by a number of factors. The contract contains no itemization for the materials to be furnished. The nature of the "goods", foam insulation, is difficult to conceptualize in the absence of installation. A major part of the contract price would appear to be attributable to labor. The terms of the contract – "insulating all vertical walls and slant ceilings" – suggests that labor and service, rather than the insulation material, are the predominant features of this agreement.

*Id.* at 1268-1269. FCW asserts that the present case is similar to *Smith* in that the resin and aggregate used to construct the floor cannot be considered a "floor" absent significant labor to install them. Also, the Defendant suggests that because the floor was constructed out of raw materials mixed and applied at the site, and is not a product that was manufactured at some outside location, this indicates that the floor installation is typical construction work outside the scope of the UCC.

In response, the Plaintiff acknowledges that the dispositive legal inquiry addresses whether the predominant feature of the transaction relates to goods or

---

[2] *See* 11 M.R.S.A. §§ 2-314 & 2-315 (2004).

services. Kirschner suggests, however, that there is no basis in the record for the Court to conclude that the predominant purpose of the contract involved services and not goods. The Plaintiff also states that the floor is a good or product under any reasonable definition of those words.

As indicated by the parties, the UCC only applies to contracts in which the predominant feature of the transaction relates to goods. *See Id.* Contrarily, where the performance of services is paramount to the parties, the implied warranty and other provisions of the UCC are not applicable. The Court presently has before it several undisputed facts that are probative of this issue. First, none of the contracts executed by the parties provides a separate itemization of the materials to be furnished. Instead, the Defendant appears to be obligated merely to "prepare" the existing concrete and "install" the new resin floor. Based on the Law Court's discussion in *Smith*, these facts suggest that labor and service is the predominant feature of the agreement. *See Id.* In addition, the undisputed facts indicate that the cost of labor was a significant part of the contract price, and that the installation was indeed a labor-intensive process[3]. These facts also tend to the conclusion that this was primarily a service-oriented contract. Lastly, like the situation in *Smith*, the nature of the "goods" supplied by FCW, mainly sand and liquid resins, have very little apparent value or purpose in the absence of installation.

As for the Plaintiff's counterarguments, they are unavailing. In light of the Law Court's discussion in *Smith*, there is ample evidence of record to support a conclusion as to the nature of the floor installation contract. Moreover, Kirschner's suggestion that

---

[3] Kirschner's attempt to dispute these statements of fact is ineffective. M.R. Civ. P. 56(h)(2) requires that a party support all denials and qualifications of fact with citations to admissible evidence of record. The rule does not permit a party to sidestep this obligation by claiming a lack of knowledge or information. Accordingly, because Kirschner has failed to adequately controvert these statements of fact, FCW's properly supported assertions are deemed admitted. *See* M.R. Civ. P. 56(h)(4).

the definition of the word "product" has some bearing on the legal analysis is incorrect. In the present context, we are concerned not with the nature of the floor, but rather, the nature of the contract.

In light of the foregoing undisputed facts and legal analysis, this Court finds that the primary purpose of the floor installation contract was for the provision of services. Therefore, the UCC as adopted in Maine is inapplicable.

## 2. Strict Products Liability Claim

In count I of the amended complaint, the Plaintiff asserts a claim against FCW sounding in strict products liability pursuant to 14 M.R.S.A. § 221. The Defendant asserts that the provision of construction labor and materials is not the sale of a product under section 221, and therefore it is entitled to summary judgment on this count.

In support of its position, FCW first states that Maine courts appear not to have addressed the issue of whether the provision of labor and materials in the construction of improvements to real property is covered under the strict liability statute. However, the Defendant notes that some out of state courts have addressed this issue and held that strict products liability does not apply under these circumstances. By way of example, the Defendant first cites to *Wolfe v. Dal-Tile Corp.*, 876 F. Supp. 116 (S.D. Miss. 1995), which also involved the installation of a floor. In that case, the United States District Court recognized that under Mississippi law, "strict products liability claims cannot lie against persons supplying 'improvements to real property' as opposed to products". *Id.* at 121 (citing *Moore v. Jesco, Inc.*, 531 So. 2d 815, 817 (Miss. 1988)). Also, the Defendant cites to a case wherein the Court of Appeal of California noted the "well settled rule in California [] that where the primary objective of a transaction is to obtain services, the doctrines of implied warranty and strict liability do not apply". *Huang v. Garner*, 157 Cal. App. 3d 404, 412, n.5 (1984). Similarly, FCW cites to a Florida case

explaining that "strict liability applies to consumer products and does not apply to improvements to real property". *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986). Additionally, the *Jackson* court noted that where the supplying of goods is only a minor element of the transaction, strict liability does not apply. *See Id.* at 1292. Lastly, the Defendant cites to a case from Georgia that was characterized by the court as dealing with negligent construction of improvements to real property and not manufacture of defective personal property. *See Seely v. Loyd H. Johnson Construction Co.*, 470 S.E.2d 283, 288 (Ga. Ct. App. 1986). The court seized upon this distinction in upholding the grant of summary judgment in favor of the builder. *See Id.* The Defendant believes that this Court should follow suit and find section 221 inapplicable under the facts of the present case.

In response, the Plaintiff attempts to distinguish each of the cases relied upon by FCW. First, Kirschner states that the *Wolfe* court failed to provide a basis for legally distinguishing improvements to real property from other products. Similarly, the Plaintiff contends that the *Huang* decision does not assist in determining whether a floor is a product. Also, Kirschner suggests that the Georgia statute is more limited than its counterpart in Maine, and therefore the *Seely* decision is inapposite.

In addition, the Plaintiff draws the Court's attention to the language of section 221, particularly that it applies to sellers of "goods or products". Kirschner notes that neither "goods" nor "products" are defined in the statute or in the case law. The Plaintiff further points out that "products" must necessarily mean something different that "goods" or both terms would not have been included by the legislature. *See Handyman Equipment Rental Co., Inc., et al. v. City of Portland*, 1999 ME 20, 724 A.2d 605 (Words are to be given meaning and not treated as superfluous). Moreover, Kirschner believes that although the floor may not be "goods", it certainly falls within a

reasonable definition of the term "products", and is therefore within the ambit of section 221.

Although the cases cited by the Defendant are helpful in understanding how other jurisdictions might resolve the present issue under their various laws, the job of this Court is to interpret the statute enacted by the Maine Legislature according to rules of construction set forth by the Law Court. Among the applicable rules is, "[w]hen interpreting a statute, we seek to give effect to the intent of the Legislature by examining the plain meaning of the statutory language and considering the language in the context of the whole statutory scheme". *Jackson Brook Institute, Inc., et al. v. Maine Insurance Guarantee Association*, 2004 ME 140, ¶ 9, 861 A.2d 652, 656. The Law Court has looked to dictionary definitions when determining the plain meaning of words. *See Id.* ¶ 13, 861 A.2d at 657. Accordingly, Black's Law Dictionary defines "product" as "[s]omething that is distributed commercially for use or consumption and that is usually (1) tangible personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption". BLACK'S LAW DICTIONARY 1225 (7th ed. 1999). A floor indeed appears to fall within the scope of this definition. In addition, the Court finds it imprudent to narrow the operation of section 221 by departing from the plain meaning of its terms, carving out an exception for products that also constitute improvements to real property. Thus, the Court concludes that count I should not be dismissed at this stage, as urged by the Defendant.

### 3. Did Kirschner Assume a Duty to Protect its Food Products?

FCW contends that it and its subcontractors have no liability for the contamination of the Plaintiff's meat products. The Defendant bases this contention on the fact that it warned Kirschner on several occasions that there was a risk of

contamination and that Kirschner should remove all meat products from the area where the work was being done. FCW asserts that these warnings give rise to a knowing assumption of a duty on the part of the Plaintiff to prevent contamination of the food product. In addition, FCW notes that even though Kirschner assumed this duty, it still made the decision not to remove the meat from coolers adjacent to the work area. The Defendant also states that it relied on the written waiver of liability in proceeding with the installation. In sum, FCW maintains that Kirschner expressly assumed the duty to prevent contamination of the meat, and expressly waived any claim against FCW arising out of the contamination.

In support of its position, the Defendant cites to *Doyle v. Bowdoin College*, 403 A.2d 1206 (Me. 1979). In *Doyle*, the Law Court held that contractual releases from liability are enforceable, so long as the release spells out the intention of the parties with the greatest of particularity. *Id.* at 1207-1208. FCW asserts that the Customer Preparation for Installation form clearly specifies the responsibilities of the respective parties with regard to protecting food product from contamination, and that duty is placed squarely on the Plaintiff. FCW also contends that the handwritten waiver executed by Gary Malbon, after FCW became aware that food product was left in coolers near the work area, clearly shows the that the parties intended the Defendant to be released of any liability for resulting contamination.

In response, the Plaintiff first points out that "[c]ourts have traditionally disfavored contractual exclusions of negligence liability and have exercised a heightened degree of judicial scrutiny when interpreting contractual language which allegedly exempts a party from liability for his own negligence". *Id.* at 1207. Kirschner also notes that the *Doyle* Court found that the document at issue was not a valid release because it contained no express reference to the defendant's liability, nor did it contain

terms such as indemnify, reimburse or hold harmless. *See Id.* at 1208-1209. To the contrary, Kirschner notes that where a document specifically references the negligence of the party seeking immunity, such reference is sufficient to extinguish negligence liability. *See Lloyd v. Sugarloaf Mountain Corp.*, 2003 ME 117, ¶ 8, 833 A.2d 1, 4.

In the present case, the document relied upon by FCW reads as follows:

9/23 – Food Product in Coolers

Kirschner understands that FCW recommends that all food product be removed from the work area per FCW's customer preparation for installation form. This includes adjacent work areas [sic] coolers.

Customer understands that FCW is not liable for odor entering coolers and damaging food product.

/s/ Gary A. Malbon                    9/23/2000

At the threshold, the Plaintiff asserts that this document is inapplicable to the Phase III contract because it was executed six months earlier in the context of an entirely separate contract governing Phase II of the project. Even if the handwritten release applies to the Phase III contract, however, Kirschner asserts that under *Doyle* and *Lloyd*, it does not meet the specificity standard for absolving FCW of liability for negligence which it had yet to commit.

Considering the language of the handwritten release in light of *Doyle* and *Lloyd*, it is apparent that the release is inadequate to relieve FCW of liability for its own negligence that leads to the contamination of or other damage to Kirschner's food product. Indeed, the above-quoted language falls far short of stating with the "greatest of particularity" any intent to absolve the Defendant of negligence liability. Given the lack of any express reference to negligence, and that the Court must construe the release strictly against FCW, FCW's argument must fail. *See Lloyd*, 2003 ME 117, ¶ 8, 833 A.2d at 4.

The entry will be:

Defendants' motion for summary judgment on counts III, V, VI, and VII of the amended complaint is GRANTED; judgment for defendants on counts III, V, VI and VII of the amended complaint; defendants' motion for summary judgment on count I of plaintiffs' complaint is DENIED; defendants' motion for summary judgment on counts II, IV, VIII, IX and XIII is DENIED.

Dated: April _____ 4 _____, 2005

Donald H. Marden
Justice, Superior Court

ZEMCO INDUSTRIES, INC. - PLAINTIFF

Attorney for: ZEMCO INDUSTRIES, INC.
STEPHEN E F LANGSDORF  - RETAINED 04/24/2002
PRETI FLAHERTY ET AL
45 MEMORIAL CIRCLE
PO BOX 1058
AUGUSTA ME 04332-1058


vs
FCW TECHNOLOGIES, INC. - DEFENDANT
660 FURNACE HILLS PIKE
LITITZ PA
Attorney for: FCW TECHNOLOGIES, INC.
PAUL R JOHNSON  - RETAINED
RICHARDSON WHITMAN LARGE & BADGER
465 CONGRESS ST, SUITE 900
PO BOX 9545
PORTLAND ME 04112-9545


Attorney for: FCW TECHNOLOGIES, INC.
WENDELL LARGE  - WITHDRAWN 03/12/2004
RICHARDSON WHITMAN LARGE & BADGER
465 CONGRESS ST, SUITE 900
PO BOX 9545
PORTLAND ME 04112-9545


MORMIC, INC. - DEFENDANT
31 KNOLLWOOD DRIVE
AKRON PA
Attorney for: MORMIC, INC.
JEFFREY TOWNE  - WITHDRAWN
179 MAIN STREET STE 202
WATERVILLE ME 04901


PRO BOND EPOXY FLOORING, INC.-VOID - DEFENDANT
31 KNOLLWOOD DRIVE
AKRON PA
MICHAEL MCLUCAS  - DEFENDANT
31 KNOLLWOOD DRIVE
AKRON PA 17501
Attorney for: MICHAEL MCLUCAS
JEFFREY TOWNE  - RETAINED
179 MAIN STREET STE 202
WATERVILLE ME 04901


JEFFREY KNIPPINBERG-VOID SR - DEFENDANT
31 KNOLLWOOD DRIVE
31 KNOLLWOOD DRIVE PA 17501

DOCKET RECORD

Attorney for: JEFFREY KNIPPINBERG-VOID SR
GREGG D BERNSTEIN  - REMOVAL 03/18/2004
LIPMAN & KATZ & MCKEE, PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051


GULF COAST POLYMER SERVICES - THIRD PARTY DEFENDANT

Attorney for: GULF COAST POLYMER SERVICES
PAUL R JOHNSON  - REMOVAL 03/12/2004
RICHARDSON WHITMAN LARGE & BADGER
465 CONGRESS ST, SUITE 900
PO BOX 9545
PORTLAND ME 04112-9545


Attorney for: GULF COAST POLYMER SERVICES
JONATHAN B HUNTINGTON  - RETAINED 06/05/2003
EATON PEABODY ET AL PA
77 SEWALL STREET
SUITE 3000
AUGUSTA ME 04330



Filing Document: COMPLAINT                    Minor Case Type: PRODUCT LIABILITY
Filing Date: 04/24/2002

## Docket Events:

04/24/2002 FILING DOCUMENT - COMPLAINT FILED ON 04/24/2002
           Defendant's Attorney: STEPHEN E F LANGSDORF
           WITH ATTCHMENTS, FILED.


04/24/2002 Party(s):  ZEMCO INDUSTRIES, INC.
           ATTORNEY - RETAINED ENTERED ON 04/24/2002
           Plaintiff's Attorney: STEPHEN E F LANGSDORF


04/25/2002 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 04/25/2002
           ISSUED TO S. LANGSDORF, ESQ.


05/14/2002 Party(s):  FCW TECHNOLOGIES, INC.
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 05/13/2002


05/14/2002 Party(s):  FCW TECHNOLOGIES, INC.
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 05/01/2002
           SERVED TO SECRETARY THAT WAS PRESENT.  (LANCASTER COUNTY, PA)


05/14/2002 Party(s):  MORMIC, INC.
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 05/13/2002


05/14/2002 Party(s):  MORMIC, INC.
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 05/01/2002
           SERVED MICHAEL MMCCLUCAS, OWNER.  (LANCASTER COUNTY, PA)


05/14/2002 Party(s):  PRO BOND EPOXY FLOORING, INC.-VOID